[Cite as *State v. Patton*, 2021-Ohio-295.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


|  |  |  |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-190694 |
|  |  | TRIAL NO. B-1806003 |
| Plaintiff-Appellee, | : |  |
| vs. | : | *O P I N I O N.* |
| JONATHON PATTON, | : |  |
| Defendant-Appellant. | : |  |


Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  February 3, 2021


*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Mary Stier,* Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Timothy J. McKenna* for Defendant-Appellant.

**ZAYAS, Presiding Judge.**

{¶1}   Jonathon Patton appeals his convictions, after a jury trial, for two counts of murder with gun specifications, one for the murder of Steven Anderson and one for the murder of Nathaniel Davis.   Raising four assignments of error, Patton contends that the convictions were based on insufficient evidence, the convictions were against the manifest weight of the evidence, the state engaged in prosecutorial misconduct, and he was deprived of his right to effective assistance of trial counsel.   For the following reasons, we affirm the trial court's judgment.

## Procedural Background

{¶2}   Jonathon Patton was indicted on two counts of murder with specifications for the murder of Steven Anderson, two counts of murder with specifications for the murder of Nathaniel Davis, and three counts of felonious assault, with specifications, of Robert Hicks, Ieasha Brooks, and Desarae Wells. After a jury trial, he was convicted of the murder charges and acquitted of the felonious-assault charges.   He was sentenced to an aggregate prison term of 24 years to life.

## Evidence Presented at Trial

{¶3}   On September 23, 2018, Desarae Wells went to the Rustic Tavern, a bar on Galbraith Road, with Nathaniel Davis, Steven Anderson, Robert Hicks, and Ieasha Brooks.   They ordered drinks and played "pop-a-shot."   As they were leaving the bar, they walked past a group of men and heard a man, later identified as Maurice Searcy, state, "The next person who takes my Black is gonna get dealt with." Davis, who believed the man was talking to them because Wells and Anderson had Black and Mild cigars in their hands, asked Searcy who he was talking to.   Searcy responded, "I wasn't talking to you, but I am now."

2

{¶4}  Davis exchanged words with Searcy, then Wells and her friends began walking to their cars.  Wells testified that Jonathon Patton kept putting his hand on his side and saying, "You all don't want no smoke."  Wells interpreted the statement to mean that she and her friends did not want him to shoot at them.  Hicks testified that Patton said, "He didn't want no smoke."  Hicks explained that the statement meant that we do not want to fight each other.  He further explained it meant that "you are not trying to fight."

{¶5}  Hicks initially testified that all of them were intoxicated, but then clarified that to him, intoxicated meant that they could stand on their feet, move around, and still operate a car.  They went to two bars that evening and had one drink at each bar.

{¶6}  The group of men, including Patton, continued to follow Wells and her friends into the parking lot.  Hicks, who was the last person to leave the bar, saw Patton approach Searcy and give him a gun.  After handing him the gun, Patton immediately said he was done talking and ran toward Anderson and punched him.  Patton and Anderson exchanged punches, then Patton went back into the crowd.  Simultaneously, two other men jumped Hicks and Davis.  As they were fighting, Hicks saw Searcy run toward Anderson with a gun in his hand.  Hicks heard three gunshots and saw the flashes.  He ran into the alley and saw Davis fall and Searcy stand over his body.  Hicks ran through the alley and hid in some bushes until the police arrived.

{¶7}  When Wells heard the shots, she ran into the alley with Davis and Hicks.  She saw Anderson lying on the ground.  Davis, who was bleeding, fell in the alley.  Wells hid in some bushes and saw Searcy look down at Davis and then run.

Wells called the police and remained in the bushes until the police arrived. Both Anderson and Davis died at the scene.

Sufficiency and Manifest Weight

{¶8} In his first and second assignments of error, which he argues together, Patton contends that his convictions were not supported by sufficient evidence and were against the manifest weight of the evidence.

{¶9} "In a challenge to the sufficiency of the evidence, the question is whether, after viewing the evidence in the light most favorable to the state, any rational trier of fact could have found all the essential elements of the crime proved beyond a reasonable doubt." *State v. Ham*, 1st Dist. Hamilton No. C-170043, 2017-Ohio-9189, ¶ 19, citing *State v. Jenks*, 61 Ohio St.3d 259, 273, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶10} Patton was convicted of two counts of murder in violation of R.C. 2903.02(A), which prohibits "purposely caus[ing] the death of another * * *." At trial, the state argued that Patton was guilty of purposeful murder under the theory of complicity. R.C. 2923.03(A)(2) defines the offense of complicity, in relevant part, as follows:

> No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:
>
> (2) Aid or abet another in committing the offense.

{¶11} "[T]o support a conviction for complicity by aiding and abetting, pursuant to R.C. 2923.03(A)(2), the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the

4

principal." *State v. Johnson*, 93 Ohio St.3d 240, 754 N.E.2d 796 (2001), syllabus. " '[T]he mere presence of an accused at the scene of a crime is not sufficient to prove, in and of itself, that the accused was an aider and abettor.' " *Id.* at 243, quoting *State v. Widner*, 69 Ohio St.2d 267, 269, 431 N.E. 1025 (1982).

{¶12} R.C. 2923.03(A) specifies that a person is only guilty of complicity when he acts with the kind of culpability required for the commission of an offense. The aider and abettor must share the criminal intent of the principal. *Id.* at syllabus. Thus, Patton is guilty of complicity to commit murder only if he purposefully aided or abetted in the murders of Anderson and Davis.

{¶13} "A defendant's participation in criminal intent may be inferred from the circumstances surrounding the crime." *In re J.C.*, 1st Dist. Hamilton No. C-180493, 2019-Ohio-4027, ¶ 15, *appeal not allowed*, 157 Ohio St.3d 1565, 2020-Ohio-313, 138 N.E.3d 1167, ¶ 15. Aiding and abetting may be shown by both direct and circumstantial evidence, and participation may be inferred from presence, companionship, and conduct before and after the offense is committed. *Johnson* at 245.

{¶14} In this case, it is undisputed that Searcy murdered Anderson and Davis. Patton contends that the state presented no evidence that Patton had the same purposeful intent to shoot and kill the victims as Searcy. The state argues that the evidence that Patton started the fight, Wells's testimony that Patton threatened to shoot while continuously touching his side, and Hicks's testimony that Patton gave his gun to Searcy immediately before starting the altercation is sufficient evidence to infer his intent from the surrounding circumstances.

{¶15} When this evidence is viewed in the light most favorable to the state, it

is clear that any rational juror could have found the essential elements of the crime proven beyond a reasonable doubt. Patton's conduct of threatening the group while grabbing his side, giving Searcy his gun, then immediately running and punching Anderson could lead a reasonable jury to conclude that Patton acted purposely to aid and abet Searcy in the murders of Anderson and Davis.

{¶16} "Even though supported by sufficient evidence, a conviction may still be reversed as being against the manifest weight of the evidence." *State v. McCombs*, 10th Dist. Franklin No. 15AP-245, 2015-Ohio-3848, ¶ 3, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). "While sufficiency of the evidence is a test of adequacy regarding whether the evidence is legally sufficient to support the verdict as a matter of law, the criminal manifest-weight-of-the-evidence standard addresses the evidence's effect of inducing belief." *State v. Cassell*, 10th Dist. Franklin No. 08AP-1093, 2010-Ohio-1881, ¶ 38.

{¶17} When considering a challenge to the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice. *Thompkins* at 387. "[W]hen reversing a conviction on the basis that it was against the manifest weight of the evidence, an appellate court sits as a 'thirteenth juror,' and disagrees with the factfinder's resolution of the conflicting testimony." *State v. Tucker*, 9th Dist. Medina No. 06CA0035-M, 2006-Ohio-6914, ¶ 5. Reversing a conviction as being against the manifest weight of the evidence should be reserved for only the most " 'exceptional case in which the

evidence weighs heavily against the conviction.' " *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983), paragraph three of the syllabus.

{¶18} Patton argues that the testimony of both Wells and Hicks was inconsistent with the statements given to the police on the night of the incident. At trial, both witnesses testified to a more detailed account of the events than they initially gave the police. Patton further argues that no physical evidence connected him to the crimes.

{¶19} Both Wells and Hicks were extensively cross-examined about the additional details. Wells explained that when she spoke with the police, she was in tears and under immense stress. She remembered more details after she spoke with the police. Hicks initially told the police that he saw an exchange between Patton and Searcy that he believed was a gun. At trial, Hicks testified he saw the gun being exchanged, although he could not identify the gun.

{¶20} With respect to the lack of physical evidence, the gun was never recovered and no fingerprints could be obtained from the shell casings. However, the state is not required to present physical evidence or recover a weapon to satisfy its burden. *See State v. English*, 1st Dist. Hamilton No. C-180697, 2020-Ohio-4682, ¶ 29.

{¶21} Next, Patton basically contends that the jurors should not have believed the testimony of Wells and Hicks. Generally, issues of witness credibility are for the trier of fact to resolve. *See State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001). The trier of fact sees and hears the witnesses and is particularly competent to determine "whether, and to what extent, to credit the testimony of particular witnesses." *State v. Glover*, 1st Dist. Hamilton No. C- 180572, 2019-Ohio-

7

5211, ¶ 30. We cannot conclude that the factfinder lost its way and created a manifest miscarriage of justice.

{¶22} Accordingly, we overrule the first and second assignments of error.

Prosecutorial Misconduct

{¶23} In his third assignment of error, Patton argues that the state engaged in multiple instances of prosecutorial misconduct which deprived Patton of his constitutional due-process rights to a fair trial. Patton contends that the prosecutor committed misconduct in closing argument by repeatedly referring to Patton as "General," raising the possibility that there were two guns because four shots were fired, but only three casings were recovered, and misstating the law on complicity by the statement, "But at minimum, General Patton's troops killed these two men, and you should hold him responsible for what they did."

{¶24} However, Patton did not object to any of the statements, and has waived all but plain error. *See* Crim.R. 52(B); *State v. Harris*, 2017-Ohio-5594, 92 N.E.3d 1283, ¶ 15 (1st Dist.). A defendant has the burden of demonstrating plain error under Crim.R. 52(B). *See State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, ¶ 14.

{¶25} Here, Patton did not request that we review the assignment of error using a plain-error analysis. "An appeals court will not construct a claim of plain error on a defendant's behalf if the defendant fails to argue plain error on appeal." *State v. Jones*, 2018-Ohio-4754, 124 N.E.3d 439, ¶ 46 (1st Dist.).

{¶26} In any event, "prosecutorial misconduct rises to the level of plain-error only if it is clear the defendant would not have been convicted in the absence of the improper comments." *State v. Smith*, 2017-Ohio-8558, 99 N.E.3d 1230, ¶ 49 (1st

Dist.). "Closing arguments must be viewed in their entirety to determine whether the disputed remarks were prejudicial." *Id.* "Prosecutors are given wide latitude during closing to argue what the evidence has shown, and to draw reasonable inferences from it." *State v. Steelman*, 2018-Ohio-1732, 111 N.E.3d 923, ¶ 25 (1st Dist.), citing *State v. Lott*, 51 Ohio St.3d 160, 165, 555 N.E.2d 293 (1990).

{¶27} Assuming, without deciding, that the prosecutor's statements were improper, we find that the outcome of the proceeding would not have been different absent such statements. In light of the evidence presented at trial, Patton would have been convicted in the absence of the prosecutor's remarks. The third assignment of error is overruled.

### Ineffective Assistance of Counsel

{¶28} In his fourth assignment of error, Patton alleges that his trial counsel was ineffective for failing to put on independent expert testimony by a crime scene reconstructionist.

{¶29} To prevail on an ineffective-assistance-of-counsel claim, Patton must show that trial counsel's performance fell below an objective standard of reasonableness, and he was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 687-688, 693, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order to demonstrate prejudice, Patton must establish that, but for counsel's errors, there is a reasonable probability that the result of trial would have been different. *State v. Burke*, 97 Ohio St.3d 55, 2002-Ohio-5310, 776 N.E.2d 79, ¶ 6. The failure to make an adequate showing on either prong is fatal to an ineffective-assistance-of-counsel claim. *See Strickland* at 697.

{¶30}  Generally, the decision not to call an expert witness does not constitute ineffective assistance of counsel because that decision is solely a matter of trial strategy.  *See State v. Coleman*, 45 Ohio St.3d 298, 307-308, 544 N.E.2d 622 (1989).  Because the decision not to present expert testimony may be tactical, the decision of trial counsel to rely on cross-examination of the state's expert does not equate to ineffective assistance of counsel.  *See State v. McRae*, 1st Dist. Hamilton No. C-180669, 2020-Ohio-773, ¶ 19.

{¶31}  Patton argues that even though his counsel cross-examined the state's crime scene investigator, his own expert could have highlighted that Searcy was the shooter and that Patton did not have the requisite mens rea to commit the crime.  However, any testimony that a crime scene reconstructionist would have provided is purely speculative.  *See State v. Madrigal*, 87 Ohio St.3d 378, 390, 721 N.E.2d 52 (2000).  Because Patton cannot demonstrate that the outcome of the proceedings would have been different had his counsel hired an expert, we cannot conclude that his counsel was ineffective.  *See State v. McHenry*, 1st Dist. Hamilton No. C-170671, 2018-Ohio-3383, ¶ 25.  We overrule the fourth assignment of error.

### Conclusion

{¶32}  Having overruled Patton's four assignments of error, we affirm the judgment of the trial court.

Judgment affirmed.

**MYERS, J.,** concurs.
**BERGERON, J.,** concurs separately.

**BERGERON, J.,** concurring separately.

{¶33}  Name-calling and mocking individuals may have, regrettably, become

acceptable in our modern political discourse—but it has no place in our halls of justice. The integrity of our criminal justice system demands that we treat criminal defendants with respect: treatment that reflects "the gravity with which Americans consider any deprivation of an individual's liberty through criminal punishment." *Deck v. Missouri*, 544 U.S. 622, 631, 125 S.Ct. 2007, 161 L.Ed.2d 953 (2005). I agree with my colleagues that the errors in this case do not justify reversal of the jury's verdict. But I write separately to underscore my frustration with the conduct of the prosecution in closing arguments—and to warn that, under different circumstances, such conduct may precipitate reversal.

{¶34} "A prosecutor is a servant of the law whose interest in a prosecution is not merely to emerge victorious, but to see that justice shall be done." *State v. Bowers*, 4th Dist. Hocking No. 06CA7, 2007-Ohio-3986, ¶ 24. Repeatedly, we have urged prosecutors to uphold their "special role in our justice system," and to "avoid improper arguments, insinuations, and assertions calculated to mislead the jury." *State v. Freeman*, 138 Ohio App.3d 408, 419, 741 N.E.2d 566 (1st Dist.2000), quoting *State v. Fears*, 86 Ohio St.3d 329, 351, 715 N.E.2d 136 (1999) (Moyer, C.J., concurring in part and dissenting in part). "Advocates have an obligation to treat the court and each other respectfully and to put forth only proper arguments based on the evidence in the record." *Bates v. Bell*, 402 F.3d 635, 641 (6th Cir.2005). Even more importantly, advocates have a responsibility to treat the defendant—whose liberty is at stake, and who is entitled to a presumption of innocence—with dignity. Mocking and name-calling a defendant "is unacceptable and unprofessional." *Bowers* at ¶ 24. Such conduct serves no legitimate purpose in our criminal justice system.

11

{¶35} But despite these admonitions, the state's closing argument in this case—specifically its rebuttal argument—reflects two strands of prosecutorial misconduct. In a case turning on issues of complicity, the state exploited Mr. Patton's surname to refer mockingly to him as "General Patton," a well-known, albeit controversial, military leader. The prosecutor's statements included:

> But Patton is leading the charge. Patton in front of the cavalry. General Patton right there. He's leading the charge. This is all on him. All of it. Who's in front? Who's mouthing? General Patton. Who's shouting? Who's in front? General Patton. Who keeps coming? General Patton in the front. Searcy behind. . . General Patton and Searcy are coming, and Patton's leading the charge.
>
> General Patton led the charge, he's responsible for what his troops do. His troops killed two people. He may have killed also. He may have fired. But at minimal, General Patton's troops killed these two men, and you should hold him responsible for what they did.

{¶36} Defense counsel mustered no objection to these statements below—and under our heightened standard of plain-error review, I concur with the majority's decision to affirm. I emphasize, however, that these remarks are highly improper. Mr. Patton is not a general; he is not leader of troops; he does not command a "cavalry." Mr. Patton is an individual defendant on trial for a charge that can result in years of incarceration, and he is entitled to be treated with respect as that trial progresses. Once again, "[w]e fail to understand why prosecutors must resort to improper name-calling during closing argument rather than letting the strength of their evidence do the talking." *State v. Hall*, 1st Dist. Hamilton Nos. C-

12

170699 and C-170700, 2019-Ohio-2985, ¶ 31.

**{¶37}** Compounding the derision exhibited in these remarks, the state's fast-and-loose approach to the record in its rebuttal argument exacerbated its initial misconduct. Throughout the trial, the state argued that Mr. Patton handed a gun to the shooter (establishing his complicity in the murders). It supported this theory with expert testimony that all three shell casings recovered from the scene were fired from the same gun, coupled with eye-witness testimony that Mr. Patton appeared to reach into his pocket and pass something to his companion just before the shooting. But then, during rebuttal argument, the prosecutor hatched a sudden revelation. He claimed, for the first time, that Mr. Patton might have been carrying a second gun—a revolver—that left no casings or bullets at the scene. Bereft of evidence, the prosecutor mused that Mr. Patton "may have killed also," and "maybe [the bullet] went through one of them" and was never recovered.

**{¶38}** Arguments based on facts not in evidence are highly improper. *See Hodge v. Hurley*, 426 F.3d 368, 384 (6th Cir.2005). Yet that is exactly what the prosecution presented to the jury in this case. Of course it is *possible* that another gun may have been present at the scene of this crime. Just as it is *possible* that there could have been a second shooter hidden behind a nearby grassy knoll. But there is no evidence whatsoever in the record to support such conjecture. Compounding the impropriety of such speculation, the state waited to raise its novel "two guns" theory until rebuttal arguments, leaving the defense with no meaningful opportunity to steer the jury's attention back to the actual evidence at hand.

**{¶39}** But defense counsel inexplicably sat on his hands here, confining our review to plain error. *State v. Fudge*, 2018-Ohio-601, 105 N.E.3d 766, ¶ 49 (10th

13

Dist.). That heightened standard of error dooms Mr. Patton's prosecutorial misconduct claim, as noted by the majority. Defense counsel should appreciate that, in the face of clearly improper prosecutorial comments, the failure to object may make the difference between affirmance and reversal. *See e.g. Bates*, 402 F.3d at 649 (reversing a defendant's death sentence because of pervasive prosecutorial misconduct during sentencing, objected to by defense counsel). And even where prosecutorial misconduct does not dictate reversal on its own, "the actions of a prosecutor may combine with an evidentiary error to cause greater impact." *State v. Morris*, 141 Ohio St.3d 399, 2014-Ohio-5052, 24 N.E.3d 1153, ¶ 31; *Hall*, 1st Dist. Hamilton Nos. C-170699 and C-170700, 2019-Ohio-2985, at ¶31 ("pervasive prosecutorial misconduct" rendered "this case even more suited for reversal").

{¶40} For the foregoing reasons, I concur in the court's judgment.

Please note:
The court has recorded its own entry this date.