[Cite as *In re T.C.*, 2025-Ohio-820.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

|  |  |  |  |
|---|---|---|---|
| IN RE: T.C. | : | APPEAL NO. | C-240145 |
|  |  | TRIAL NO. | 21/3947 X |
|  | : |  |  |
|  | : |  |  |
|  |  | O P I N I O N |  |
|  | : |  |  |

Appeal From: Hamilton County Juvenile Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: March 12, 2025

*Connie M. Pillich*, Hamilton County Prosecuting Attorney, and *Norbert Wessels*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Jessica Moss*, Assistant Public Defender, for Defendant-Appellant.

**ZAYAS, Judge.**

**{¶1}** T.C. appeals his adjudication and disposition for sexual imposition. In three assignments of error, T.C. argues: (1) that the juvenile court committed plain error by adopting the magistrate's decision when the decision failed to clearly establish corroboration as required by R.C. 2907.06(B); (2) his trial counsel provided ineffective assistance; and (3) the court erred by denying his motion for exemption from classification as a Tier I offender. For the following reasons, we affirm the judgment of the juvenile court.

## Factual Background

**{¶2}** T.C. was charged with sexual imposition for having unwanted sexual contact with his girlfriend K.S. on December 3, 2021. Following additional disclosures by K.S., T.C. was charged with one count of rape. The case proceeded to trial in front of the magistrate.

**{¶3}** K.S. testified that she met T.C. when they attended the same middle school. They dated for a few weeks when she was in the 7th, 8th, and 11th grades. The two would talk, joke, and send text messages, including sexual texts, to each other through Discord, a free communication app.

**{¶4}** Both of them attended the same high school and decided to walk to a park after school on December 11, 2021. Prior to leaving school, they were texting, and K.S. told T.C., "Nothing sexual. I'm going through some things and I can't handle that." When K.S. reiterated that she did not want to participate in any sexual activities at the park, T.C. responded, "Okay. I won't try anything."

**{¶5}** K.S. testified that after school, they walked to the park together. When they arrived, they walked to a trail because T.C. said he wanted to show her something. T.C. led her down a secluded, heavily wooded trail and veered off the trail into a small,

grassy area. K.S. asked him what he wanted to show her, and he started touching her. K.S. testified that she told T.C. to stop, but he continued to touch and squeeze her breasts, with his hands under her shirt and bra. K.S. testified that he slipped his hands down her pants and touched her vaginal area. While they were standing, T.C. pulled down one of her pants legs, lowered his pants, and placed his penis into her vagina. K.S. told him to stop several times. Eventually, she told T.C. that she needed to use the bathroom, so he stopped.

{¶6} K.S. walked out of the woods and toward a group of people sitting in the park to feel safe. As she approached the group, K.S. recognized a few of the people sitting together. K.S. told the group that T.C. touched her on the trail, and she told him to stop. A woman sat with K.S. until her father picked her up from the park.

{¶7} T.C., who had followed K.S. out of the woods, sat by himself a few feet from the group. He texted K.S. that he was returning to the school. T.C. found out that K.S. told people in the group what had happened because someone from the group hit him with a stick. T.C. asked K.S. to tell them it was a lie or that she was joking. T.C. was concerned they would hurt him. K.S. responded that what T.C. did was wrong, and instead of apologizing to her, he asked her to lie. T.C. replied, "I'm so sorry. I really am." When she mentioned her past experience with being forced to do things, T.C. explained that he did not think he was forcing her and apologized again.

{¶8} That night, K.S. testified that she told her father that she was pushed and assaulted in the park but did not share any details with him. K.S. told her father after he walked into her bedroom and saw her "breaking down," which meant trying to kill herself. She also told her aunt that day and a few friends at school. When K.S. told T.C. that she told her father, T.C. asked what she had told him. The following text exchange occurred:

K.S.: I told him it all about how we went to the park and u led me off trail and how u kept touching me even tho I said not too and then told him how I lied about having to piss to get away from the situation and then chilled with twitch and met a really sweet boy.

T.C.: Okay Hopefully he doesn't go to the school

K.S.: why what you did was wrong

T.C.: I know And I apologize I'm such a fuck up I never take signs and listen

{¶9} A few days later, K.S. reported the incident to the school, and T.C. was suspended. K.S. spoke with the school resource officer and was interviewed at the Mayerson Center a few months later. K.S. did not initially disclose the rape to anyone because she was not comfortable. K.S. told the interviewer at the Mayerson Center about the rape.

{¶10} On cross-examination, K.S. was presented with the written statement she provided to the school. K.S. stated that T.C. touched her breast and tried to touch her inside of her pants. She did not claim that T.C. raped her. K.S. gave a similar statement to the police when she spoke with them five days after the incident. In both statements, K.S. said that T.C. followed her to the park, although she admitted that they had planned to go the park, and they walked together.

{¶11} After reading additional text exchanges between K.S. and T.C., K.S. clarified that T.C. and she had dated from October to December and had engaged in sexual intercourse during that time, although she told the police they were not dating at the end of October. During the Mayerson interview, K.S. disclosed the alleged rape for the first time. K.S. provided specific details regarding the alleged rape during her testimony.

**{¶12}** Sergeant Mike Stockmeier, a police supervisor, testified that he was contacted by the school resource officer about the incident. Stockmeier began assisting with the investigation as a detective after K.S. accused T.C. of raping her. Stockmeier conducted follow-up interviews with K.S. and received her permission to access her Discord account. Initially, K.S. alleged that T.C. inappropriately touched her, but during the Mayerson interview, she alleged that T.C. penetrated her. T.C. admitted he "ma[d]e out and stuff" with K.S. in the park but denied any penetration. After Stockmeier testified, both parties rested, and the magistrate continued the case for decision to review all of the evidence.

**{¶13}** The magistrate adjudicated T.C. delinquent of sexual imposition after finding that T.C. and K.S. had a teenage romance, which included sexual activity and prompted K.S. to specifically tell him that she did not want to participate in sexual activity that day. T.C. indicated that he understood. At the park, T.C. led K.S. into the woods and upon reaching a clearing, he began fondling and squeezing K.S.'s breasts under her bra and sliding his hands under her pants. T.C.'s acknowledgment of wrongdoing, an immediate apology, taken in context with all of the other messages, supports the conclusion that T.C. committed sexual imposition.

**{¶14}** The magistrate further found that K.S.'s rape allegations were not disclosed until four months after the incident. Prior to the delayed disclosure, all of K.S.'s allegations focused solely on touching. K.S.'s written statement to the school stated T.C. tried to put his hands in her pants and shirt, with no mention of penetration or rape. K.S.'s sworn testimony describing the details of the alleged rape were "highly implausible," raising serious doubts that the offense could have occurred in the way she described. The magistrate found that the State failed to prove the rape occurred.

**{¶15}** The matter was continued for disposition. T.C. did not file any

objections to the magistrate's decision, and the trial court adopted the magistrate's decision.

{¶16} Prior to the disposition, T.C. filed a motion seeking to be excluded from classification as a juvenile sexual offender. T.C. argued that he was exempt from classification because his offense did not involve a lack of consent. The State responded that sexual imposition is, by definition, nonconsensual and is ineligible for the exception. The trial court denied the motion, noting that the trial evidence established the touching was nonconsensual. T.C. filed an objection, and the juvenile court overruled the objection.

{¶17} T.C. appealed, challenging the corroborating evidence in support of the adjudication, the effectiveness of his trial counsel, and the classification as a juvenile sexual offender.

### Corroboration

{¶18} In his first assignment of error, T.C. contends that the juvenile court committed plain error when it adopted the magistrate's decision adjudicating T.C. of sexual imposition when the decision failed to clearly establish corroboration.

{¶19} T.C. acknowledges that we review for plain error when a party fails to file objections to a magistrate's decision. *See In re S.N.*, 2020-Ohio-3958, ¶ 20 (1st Dist.); Juv.R. 40(D)(3)(b)(iv). Under plain-error review, T.C. bears the burden to demonstrate that "an error occurred, that the error was obvious, and that there is 'a reasonable probability that the error resulted in prejudice,'" meaning that the error affected the outcome of the trial. *State v. Rogers*, 2015-Ohio-2459, ¶ 22.

{¶20} T.C. argues that the adjudication was not supported by the evidence because the State failed to provide evidence of corroboration as required by R.C. 2907.06(B), which provides: "No person shall be convicted of a violation of this section

6

solely upon the victim's testimony unsupported by other evidence."

**{¶21}** The Ohio Supreme Court addressed the corroboration requirement in *State v. Economo*, 76 Ohio St.3d 56 (1996), and held that, "The corroborating evidence necessary to satisfy R.C. 2907.06(B) need not be independently sufficient to convict the accused, and it need not go to every essential element of the crime charged. Slight circumstances or evidence which tends to support the victim's testimony is satisfactory." *Id.* at syllabus. In *Economo*, the Court found that the victim was treated by the doctor on the date in question, promptly reported the incident to authorities, appeared to be upset, and did not want to be alone with the doctor. *Id.* at 60. This evidence satisfied the corroborating-evidence requirement. *Id.*

**{¶22}** Similarly, this court has found sufficient corroborating evidence where the victim immediately disclosed the sexual touching to her mother, told her stepmother and boyfriend, and was crying and upset, and the defendant admitted he may have accidentally touched her. *See State v. Stacy*, 2016-Ohio-7977, ¶ 6-7 (1st Dist.).

**{¶23}** Here, as the juvenile court found, "T.C.'s acknowledgment of wrong-doing and immediate apology, taken in context with all the other messages between he and K.S., supports the conclusion that he committed the offense of sexual imposition." Moreover, T.C. admitted to "mak[ing] out and stuff" with K.S. at the park. K.S. immediately disclosed the unwanted touching to friends in the park, who in turn told T.C., which was confirmed by T.C. in messages sent to K.S. That day, K.S. told her aunt during a phone conversation and her father after he walked into her bedroom and saw her "breaking down." A few days after the incident, she told the school. The evidence offered by the State satisfies the corroboration requirement. *See Economo* at 60; *Stacy* at ¶ 6-7. Thus T.C. cannot show plain error.

**{¶24}** Accordingly, we overrule the first assignment of error.

## Ineffective Assistance of Counsel

**{¶25}** In the second assignment of error, T.C. argues that he was denied the effective assistance of trial counsel where counsel failed to file objections to the magistrate's decision and conceded T.C. engaged in offensive sexual contact.

**{¶26}** To prevail on an ineffective-assistance-of-counsel claim, T.C. must establish that trial counsel's performance fell below an objective standard of reasonableness, and he was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 687-688 (1984). To demonstrate prejudice, T.C. must show that, but for counsel's errors, there is a reasonable probability that the result of trial would have been different. *See State v. Patton*, 2021-Ohio-295, ¶ 29 (1st Dist.). The failure to make an adequate showing on either prong is fatal to an ineffective-assistance-of-counsel claim. *See Strickland* at 697.

**{¶27}** T.C. first argues his counsel was ineffective for failing to file objections to the magistrate's decision because there was a strong probability the juvenile court would have granted the objection since there was insufficient corroboration. As discussed above, the State provided sufficient evidence of corroboration, so T.C. cannot establish that he was prejudiced by his counsel's failure to object on this ground.

**{¶28}** Next T.C. contends that a de novo review by the juvenile court would have established K.S.'s lack of credibility.

**{¶29}** When no objections are filed, a juvenile court's review of the magistrate's decision is limited to errors of law and those evident on the face of the decision itself. *See* Juv.R. 40(D)(4)(c). T.C. speculates that the juvenile court would have rejected the magistrate's credibility determinations with respect to the sexual-

imposition count had objections been filed because the court would have conducted "an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law." *See* Juv.R. 40(D)(4)(d). However, when objections are filed, the juvenile court is not required to hold a hearing or hear additional evidence. *In re T.L.C.*, 2014-Ohio-3995, ¶ 31 (12th Dist.), citing Juv.R. 40(D)(4)(d).

{¶30} Here there was a mixed credibility determination by the magistrate. The magistrate did not find K.S. credible regarding the rape allegations, pointing to the fact that it was not discussed until months after she reported the sexual imposition and her "highly implausible" testimony regarding the details of the alleged rape.

{¶31} The magistrate found K.S.'s testimony credible with respect to the sexual conduct in the park. The text messages and T.C.'s acknowledgment of wrongdoing and multiple apologies supported the credibility determination. As discussed previously, the State provided ample evidence of corroboration supporting K.S.'s testimony. Therefore, T.C.'s credibility argument is speculative and without merit. T.C. has not established that he was prejudiced by the failure to file objections. *See In re S.N.*, 2020-Ohio-3958, ¶ 25-26 (1st Dist.) (holding trial counsel's failure to file objections did not prejudice S.N. because his credibility argument lacked merit).

{¶32} T.C. argues that the evidence did not establish that he knew the conduct was offensive, and therefore, his counsel "should have challenged the magistrate's finding that K.S. had made her wishes clear about not wanting to engage in sexual activity on the date in question." However, the text messages between the two reveal that K.S. told him that she did not want to engage in any sexual activity, and T.C. stated that he understood. T.C. admitted to "making out and stuff," acknowledged his wrongdoing, and apologized multiple times to K.S. Accordingly, the State sufficiently

9

established that he knew the touching was offensive.

**{¶33}** T.C. also speculates that the trial court would have found the adjudication was against the manifest weight of the evidence. T.C.'s argument fails because it is speculative and there was no conflicting evidence regarding the offensive nature of the touching. Therefore, T.C. was not prejudiced by counsel's failure to object on that basis.

**{¶34}** Finally, T.C. alleges that his trial counsel was ineffective for conceding that T.C. engaged in offensive sexual contact during the hearing on his motion for exclusion from the sex-offender classification.

**{¶35}** Significantly, at the time of the hearing, T.C. had previously been adjudicated delinquent for sexual imposition. In arguing that T.C. should be exempt from classification as a sex offender, counsel argued that "consent is not an element of the offense" . . . "it was an offense of touching." Counsel merely acknowledged that the State proved at trial that the touching was offensive, an element of the offense. Accordingly, T.C. cannot establish that he was prejudiced by this acknowledgment during the postadjudication hearing seeking a classification exemption.

**{¶36}** We overrule the second assignment of error.

## Sex-Offender Classification

**{¶37}** In his third assignment of error, T.C. contends that the court erred by denying T.C.'s motion for exemption from classification because lack of consent is not implicit in the offense of sexual imposition and any sexual contact between the two was consensual.

**{¶38}** Under R.C. 2950.01(A)(1) and (E)(1)(a), a violation of the sexual-imposition statute is a sexually-oriented offense, which mandates a classification as a Tier I sex offender, unless one of the exceptions to the definition of "sex offender"

applies. T.C. argued in his motion that he was eligible for the exception contained in R.C. 2950.01(B)(2), which states, in relevant part:

> "Sex offender" does not include a person who . . . has been adjudicated a delinquent child for committing a sexually oriented offense if the offense involves consensual sexual conduct or consensual sexual contact and either of the following applies:
>
> (b) The victim of the offense was thirteen years of age or older, and the person who is convicted of . . . the sexually oriented offense is not more than four years older than the victim.

**{¶39}** T.C. argues that the offense of sexual imposition does not involve a lack of consent, and T.C. was eligible for exemption from classification because K.S. was older than 13 at the time of the offense, and T.C. was not more than four years older than K.S.

**{¶40}** The juvenile court, relying on *State v. Kuritar*, 2012-Ohio-3849 (2d Dist.), held that "[l]ack of consent is implicit in the offense of [sexual imposition]." *Id.* at ¶ 2. In *Kuritar*, the court explained that a conviction for sexual imposition:

> requires a finding that the offender knows that the sexual contact is offensive to the victim, or is reckless in this regard. If the sexual contact were consensual — i.e., the victim consented to it — then the defendant could not have known that the sexual contact was offensive to the victim, or been reckless in that regard. If the victim consented to the contact, the defendant would have no reason to believe that it would be offensive to the victim. Therefore, implicit in the definition of Sexual Imposition under R.C. 2907.06(A)(1) is that the sexual contact is not consensual. Properly instructed, a reasonable jury could not return a

verdict of guilty under R.C. 2907.06(A)(1) for consensual sexual contact.

*Id.* at ¶ 45. *See State v. Raber*, 2014-Ohio-249, ¶ 12 (9th Dist.) (concluding that a conviction for sexual imposition requires offensive sexual contact, which is, "by definition, not consensual.").

**{¶41}** The Eighth District Court of Appeals reached a similar conclusion when determining whether the exception applied to a sexual-battery offense. In *State v. Kohler*, 2024-Ohio-3302 (8th Dist.), the defendant, a corrections officer, was convicted of sexual battery for sexual conduct with two inmates. *Id.* at ¶ 2. Kohler argued that he was entitled to the exemption because there was no finding by the jury of lack of consent. *Id.* at ¶ 51.

**{¶42}** The court concluded that the guilty finding "impliedly determined that H.K. and A.W., inmates subjected to sexual battery by Kohler in an authoritarian position, were legally unable to consent to the sexual activity." *Id.* at ¶ 55. Thus, the trial court was required to classify him as a sex offender. *Id.*

**{¶43}** Here, T.C. was adjudicated delinquent for sexual imposition after the court found he engaged in offensive sexual contact, which is nonconsensual. *See Kuritar* at ¶ 45; *Raber* at ¶ 12.

**{¶44}** Consequently, we overrule the third assignment of error.

## Conclusion

**{¶45}** Having overruled T.C.'s three assignments of error, we affirm the judgment of the trial court.

Judgment affirmed.

**KINSLEY, P.J.**, and **BOCK, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.