[Cite as *State v. Ellerbe*, 2026-Ohio-170.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | Case No. 2024 CA 0081 |
| Plaintiff - Appellee | <u>Opinion and Judgment Entry</u> |
| -vs- | Appeal from the Court of Common Pleas, Case No. 2023-CR-0829 |
| CYRUS ELLERBE | Judgment:   Affirmed |
| Defendant – Appellant | Date of Judgment Entry: January 20, 2026 |

**BEFORE:** Andrew J. King; Robert G. Montgomery; Kevin W. Popham, Appellate Judges

**APPEARANCES:** JODIE M. SCHUMACHER, MICHELLE FINK, for Plaintiff-Appellee; WESLEY C. BUCHANAN, MICHAEL L. BROWN, for Defendant-Appellant.


*King, P.J.*


{¶ 1}   Defendant-Appellant Cyrus Ellerbe appeals the October 7, 2024 judgment of conviction and sentence of the Richland County Court of Common Pleas. Plaintiff-Appellee is the State of Ohio. We affirm the trial court.

**Facts and Procedural History**

{¶ 2}   This matter arose at a Halloween party held on October 27, 2023 at an Airbnb on Ferndale Drive in Mansfield, Ohio. The hostess of the party, 16-year-old N.H. had posted an open invitation to the party on social media.

{¶ 3}   Due to the open invitation, dozens of juveniles and young adults showed up that evening and the Airbnb home was crowded. Ellerbe and his codefendant Edonnez

Williams attended along with three other friends including Symirr Phillips who drove everyone to the party. As they left from Phillip's home, a neighbor's video surveillance camera captured them getting into Phillip's car before heading to the party and Phillips brandishing a handgun before getting into the driver's seat.

{¶ 4}   Upon arrival at the party, Ellerbe and his friends smoked marijuana in the front yard of the Airbnb. Thereafter, Ellerbe and Williams entered the party with guns and opened fire shortly thereafter. The two discharged ten to fifteen rounds down a hallway leading to a bedroom, killing two partygoers and injuring four others. One person present at the time, 15-year-old D.L., observed Ellerbe before and during the shooting. Guests fled from the home as the shooting began.

{¶ 5}   Phillips was outside when the shooting started and ran to his car to wait for his friends. Once they had all returned to the car, Phillips drove away as Ellerbe continued shooting towards the Airbnb from the back-passenger seat of the vehicle, and Williams did the same from the front passenger seat. Several rounds struck a neighbor's vehicle. Their flight from the area was captured on a neighbor's video surveillance camera.

{¶ 6}   Mansfield Police Department Officer Raymond Reedy was first on the scene where he observed people running in and out of the house. Upon entering the home, Reedy discovered 17-year-old J.B. dead in the entrance area. He proceeded into the home and down a short hallway leading to a bedroom where several guests had taken shelter. Inside he found eighteen-year-old B.C. deceased. Three other guests, J.D., I.S., T.B., and N.B. sustained non-fatal gunshot wounds.

{¶ 7}   Officers recovered several handguns inside the Airbnb along with numerous shell casings. Later investigation determined that none of the shell casings found in the

home were fired from any of the weapons found inside the Airbnb. The shell casings found inside the Airbnb were all either 9-millimeter or 22 caliber shells. Additional 9-millimeter and 22 caliber shell casings were recovered in front of the Airbnb along the flight path of Ellerbe and his coconspirators. Those shell casings matched those found inside the Airbnb.

{¶ 8}   D.L was later presented with a photo array and identified Ellerbe as the shooter. Phillips and his brother identified Ellerbe and Williams as the individuals shooting at the Airbnb as they fled the scene.

{¶ 9}   As a result of these events, following bind over proceedings, the Richland County Grand Jury returned a 15-count indictment charging Ellerbe as follows:

{¶ 10} Count one, murder of B.C. with a three-year firearm specification;

{¶ 11} Count two, felony murder of B.C. with a three-year firearm specification;

{¶ 12} Count three, felony murder of B.C. with a three-year firearm specification;

{¶ 13} Count four, felonious assault of B.C. with a three-year firearm specification;

{¶ 14} Count five, felonious assault of B.C. with a three-year firearm specification;

{¶ 15} Count six, murder of J.B. with a three-year firearm specification;

{¶ 16} Count seven, felony murder of J.B. with a three-year firearm specification;

{¶ 17} Count eight, felony murder of J.B. with a three-year firearm specification;

{¶ 18} Count nine, felonious assault of J.B. with a three-year firearm specification;

{¶ 19} Count ten, felonious assault of J.B. with a three-year firearm specification;

{¶ 20} Count eleven, felonious assault of I.S. with a three-year firearm specification;

{¶ 21} Count twelve, felonious assault of T.B. with a three-year firearm specification;

{¶ 22} Count thirteen, felonious assault of J.D. with a three-year firearm specification;

{¶ 23} Count fourteen, felonious assault of N.B. with a three-year firearm specification;

{¶ 24} Count fifteen, discharge of a firearm on or near prohibited premises with a three-year firearm specification and a five-year "drive-by" firearm specification.

{¶ 25} Ellerbe entered pleas of not guilty to the charges and elected to proceed to a jury trial which began on August 20, 2024. Following seven days of testimony and a jury view of the scene, the jury convicted Ellerbe as charged.

{¶ 26} On October 3, 2024, the trial court sentenced Ellerbe as follows:

{¶ 27} Count 1, the murder of B.C., 15 years to life. The trial court merged counts two, three, four and five with count one.

{¶ 28} Count six, the murder of J.B., 15 years to life. The trial court merged counts seven, eight, nine and ten with count six.

{¶ 29} Count 11, felonious assault of I.S., six years to run consecutive to counts one and six.

{¶ 30} Count 12, felonious assault of T.B., two years to run consecutive to counts one, six, and eleven.

{¶ 31} Count 13, felonious assault of J.D., two years to run consecutive to counts one, six, eleven, and twelve.

{¶ 32} Count 14, felonious assault of N.B., two years to run consecutive to counts one, six, eleven, twelve, and thirteen.

{¶ 33} Count 15 discharge of a firearm on or near prohibited premises, 24 months to run consecutive to all other counts.

{¶ 34} The trial court found the firearm specifications for counts one, six, 11, 12, 13, 14 and 15 were separate victims/acts and therefore were not committed as part of the same act or transaction. The trial court imposed additional prison terms for each specification for an aggregate total prison term of 67 years to life.

{¶ 35} Ellerbe timely filed an appeal and the matter is now before this court for consideration. He raises four assignments of error as follow:

I

{¶ 36} "CYRUS'S CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

II

{¶ 37} "CYRUS'S CONVICTIONS ARE SUPPORTED BY INSUFFICIENT EVIDENCE AS A MATTER OF LAW."

III

{¶ 38} "CYRUS RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL."

IV

{¶ 39} "CYRUS WAS SENTENCED CONTRARY TO LAW."

I, II

{¶ 40} Because they are interrelated, we elect to address Ellerbe's first and second assignments of error together. In these assignments of error, Ellerbe argues his

convictions are unsupported by sufficient evidence and are against the manifest weight of the evidence. We disagree.

## Standard of Review

{¶ 41} A review of the sufficiency of the evidence and a review of the manifest weight of the evidence are separate and legally distinct determinations. *State v. Thompkins*, 78 Ohio St.3d 380, 387(1997) "While the test for sufficiency requires a determination of whether the State has met its burden of production at trial, a manifest weight challenges questions whether the State has met its burden of persuasion." *Id*. at 390.

{¶ 42} On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. *State v. Jenks*, 61 Ohio St.3d 259 (1991). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307 (1979). On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). See also, *State v. Thompkins*, 78 Ohio St.3d 380 (1997). The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175.

**Ellerbe's Arguments**

**Evidence of Purposeful or Knowing Conduct**

{¶ 43} Ellerbe first argues the State failed to produce evidence demonstrating he purposefully caused the death of J.B or B.C. or knowingly caused their deaths as a result of committing felonious assault.

{¶ 44} Ellerbe was charged with two counts of murder pursuant to R.C. 2903.02(A). These counts required the State to demonstrate that Ellerbe acted purposefully. "A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature." R.C. 2901.22(A).

{¶ 45} Ellerbe was also charged with four counts of felony murder pursuant to R.C. 2903.02(B) with a requisite offense of felonious assault. These charges required the State to prove Ellerbe caused the death of another while knowingly committing felonious assault. "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist." R.C. 2901.22(B).

{¶ 46} Ellerbe's only arguments against a finding that the State failed to prove each requisite mens rea are that he denied all involvement, and the shooter was not identified by any of the victims. While the shooter may not have been identified by any of the victims, a bystander, D.L., did identify Ellerbe as the shooter. Corroborating D.L's testimony, there

was no dispute that Ellerbe was at the party. Testimony further established Ellerbe was armed, and continued shooting towards the Airbnb as he and his coconspirators fled the party. Transcript of trial (T.) 776-777, 783, 884, 856 States exhibits193, 59.6.

{¶ 47} We further note that Ellerbe fired 10-15 rounds in close quarters at a crowded party taking place in a small home.  T. 644. Evidence that a defendant fired a gun into a crowd of people is sufficient to support a finding that the defendant acted purposefully. *State v. Scales*, 2024-Ohio-2171, ¶¶22-23 (8th Dist). "When a person fires a gun into a group of people, one can infer intent to cause death." *Id*. citing *State v. Hubbard*, 2013-Ohio-2735, ¶ 23-24. We therefore conclude, the State produced sufficient evidence to support each requisite degree of culpability.

### Circumstantial Evidence

{¶ 48} Ellerbe next argues his convictions were not supported by sufficient evidence because the State presented only circumstantial evidence. He complains the State failed to produce any forensic evidence and the weapons that killed or injured the victims were never recovered.

{¶ 49} First, it is axiomatic that circumstantial and direct evidence inherently possess the same probative value. See *Jenks,* supra at paragraph one of the syllabus.

{¶ 50} Next, the State is not required to produce forensic evidence or a murder weapon. A lack of physical or forensic evidence does not require reversal since the testimony of any witness, if believed, is sufficient to sustain a conviction. *State v. Harris*, 2020-Ohio-1497, ¶ 31 (8th Dist.).

{¶ 51} Direct evidence in this matter consisted of the testimony of D.L who stated he saw Ellerbe open fire in the hallway of the Airbnb. He stated he observed Ellerbe for

approximately five minutes before Ellerbe opened fire and had no difficulty seeing Ellerbe because the light was on in the hallway where Ellerbe was standing. (T.) 646, 637. This testimony, standing alone, if believed by the jury, was sufficient to prove the murder and felonious assault charges as well as the attendant gun specifications.

{¶ 52} Moreover, Ellerbe's argument regarding a lack of forensic evidence is disingenuous. He argues that five firearms were found in the Airbnb, yet none could be linked to him. While accurate, this fact supports the State's case. While there were other guns found near the deceased and in the back bedroom at the scene, forensic evidence demonstrated that none of the shell casings found in the home or in front of the property come from any of the weapons found inside the Airbnb. T. 1648, 1669. Further testimony established that the shots fired inside the home were shot into the hallway toward the back bedroom, not the reverse. T. 1704-1705, 1707-1711 Additionally, testimony from Phillips and his brother indicated Ellerbe and his codefendant continued to shoot toward the Airbnb as they fled the scene in a coconspirator's car. T.773-776, 783, 844. All of the shell casings found outside the Airbnb matched those found inside the Airbnb. T. 1647-1650 A neighboring security camera captured Ellerbe and his coconspirators fleeing the scene as Ellerbe and Williams fired their weapons from the front and rear passenger-side seats. States exhibits 59.6 and 193.

{¶ 53} We conclude the State produced abundant evidence, both circumstantial and direct, connecting Ellerbe to the charged crimes and the fact that he committed those crimes with a gun.

**Witness Credibility**

{¶ 54} Finally, Ellerbe challenges the credibility and motives of the State's fact witnesses. Credibility determinations, however, are a matter for the trier of fact to sort out. Because the trier of fact sees and hears the witnesses and is particularly competent to decide whether, and to what extent, to credit the testimony of particular witnesses, an appellate court must afford substantial deference to its determinations of credibility. *Barberton v. Jenney*, 2010-Ohio-2420, ¶ 20. Thus, an appellate court will leave the issues of weight and credibility of the evidence to the finder of fact, as long as a rational basis exists in the record for its decision. *State v. Picklesimer*, 2012-Ohio-1282, ¶ 24 (4th Dist.). We find no evidence in the record to support a conclusion that the jury lost its way in making its credibility determinations and convicting Ellerbe as charged.

{¶ 55} Upon review of the entire record, we conclude Ellerbe's convictions are supported by sufficient evidence and are not against the manifest weight of the evidence. Accordingly, the first and second assignments of error are overruled.

III

{¶ 56} In his third assignment of error, Ellerbe argues his trial counsel rendered ineffective assistance. We disagree.

**Standard of Review**

{¶ 57} To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate: (1) deficient performance by counsel, i.e., that counsel's performance fell below an objective standard of reasonable representation, and (2) that counsel's errors prejudiced the defendant, i.e., a reasonable probability that but for counsel's errors, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-

688 (1984); *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraphs two and three of the syllabus. "Reasonable probability" is "probability sufficient to undermine confidence in the outcome." *Strickland* at 694.

{¶ 58} Because there are countless ways to provide effective assistance in any given case, judicial scrutiny of a lawyer's performance must be highly deferential. *Strickland*, 466 U.S. 668 at 694. "Decisions on strategy and trial tactics are granted wide latitude of professional judgment, and it is not the duty of a reviewing court to analyze trial counsel's legal tactics and maneuvers." *State v. Quinones*, 2014-Ohio-5544, ¶ 18 (8th Dist.). Decisions about which witnesses to call involve matters committed to counsel's professional judgment. *State v. Williams*, 2003-Ohio-4396, ¶ 127 "Generally, counsel's decision whether to call a witness falls within the rubric of trial strategy and will not be second-guessed by a reviewing court." *State v. Treesh*, 90 Ohio St.3d 460, 490 (2001).

{¶ 59} Ellerbe argues his counsel rendered ineffective assistance because counsel failed to call an expert witness on marijuana intoxication in juveniles. He cites no authority that would support a conclusion that failure to call such an expert constitutes ineffective assistance. In fact, "the decision not to call an expert witness does not constitute ineffective assistance of counsel because that decision is solely a matter of trial strategy." *State v. Patton*, 2021-Ohio-295, ¶ 29 (1st Dist.) at ¶ 30. But even if we were to assume, arguendo, that failing to call an expert was questionable, it is well settled that debatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel. *State v. Phillips*, 74 Ohio St.3d 72, 85 (1995). Counsel may have reasonably made the tactical decision to allow the jury to draw its own conclusions regarding juveniles consuming marijuana and the impact it may have had on 15-year-old

D.L.,'s ability to identify the shooter, or to avoid drawing attention to the fact that Ellerbe and his coconspirators were also smoking marijuana.

{¶ 60} The third assignment of error is overruled.

IV

{¶ 61} In his final assignment of error, Ellerbe argues his sentence is contrary to law. Specifically, he argues his firearm specifications should have merged for sentencing. We disagree.

Applicable Law

{¶ 62} R.C. 2941.25 governs multiple counts and states the following:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
>
> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 63} In *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, syllabus, the Supreme Court of Ohio held the following:

1. In determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must evaluate three separate factors—the conduct, the animus, and the import.

2. Two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable.

3. Under R.C. 2941.25(B), a defendant whose conduct supports multiple offenses may be convicted of all the offenses if any one of the following is true: (1) the conduct constitutes offenses of dissimilar import, (2) the conduct shows that the offenses were committed separately, or (3) the conduct shows that the offenses were committed with separate animus.

{¶ 64} The *Ruff* court explained at ¶ 26:

At its heart, the allied-offense analysis is dependent upon the facts of a case because R.C. 2941.25 focuses on the defendant's conduct. The evidence at trial or during a plea or sentencing hearing will reveal whether the offenses have similar import. When a defendant's conduct victimizes more than one person, the harm for each person is separate and distinct, and therefore, the defendant can be

convicted of multiple counts. Also, a defendant's conduct that constitutes two or more offenses against a single victim can support multiple convictions if the harm that results from each offense is separate and identifiable from the harm of the other offense. We therefore hold that two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable.

{¶ 65} The sentence for a firearm specification is contained in R.C. 2929.14(B)(1)(a), which provides in relevant part:

(a) Except as provided in division (B)(1)(e) of this section, if an offender who is convicted of or pleads guilty to a felony also is convicted of or pleads guilty to a specification of the type described in section 2941.141, 2941.144, or 2941.145 of the Revised Code, the court shall impose on the offender one of the following prison terms:

. . .

(ii) A prison term of three years if the specification is of the type described in division (A) of section 2941.145 of the Revised Code that charges the offender with having a firearm on or about the offender's person or under the offender's control while committing the offense and displaying the firearm, brandishing the firearm,

indicating that the offender possessed the firearm, or using it to facilitate the offense.

{¶ 66} R.C. 2929.14(B)(1)(b) indicates that a sentence for these specifications, except as provided for in R.C. 2929.14(B)(1)(g), should only arise once regarding crimes committed as a single act or transaction.

{¶ 67} R.C. 2929.14(B)(1)(g), provides:

(g) If an offender is convicted of or pleads guilty to two or more felonies, if one or more of those felonies are aggravated murder, murder, attempted aggravated murder, attempted murder, aggravated robbery, felonious assault, or rape, and if the offender is convicted of or pleads guilty to a specification of the type described under division (B)(1)(a) of this section in connection with two or more of the felonies, the sentencing court shall impose on the offender the prison term specified under division (B)(1)(a) of this section for each of the two most serious specifications of which the offender is convicted or to which the offender pleads guilty and, in its discretion, also may impose on the offender the prison term specified under that division for any or all of the remaining specifications.

{¶ 68} R.C. 2929.14(C)(1)(a) dictates how sentences for firearm specifications must be served:

(a) Subject to division (C)(1)(b) of this section, if a mandatory prison term is imposed upon an offender pursuant to division (B)(1)(a) of this section for having a firearm on or about the offender's person or under the offender's control while committing a felony, if a mandatory prison term is imposed upon an offender pursuant to division (B)(1)(c) of this section for committing a felony specified in that division by discharging a firearm from a motor vehicle, or if both types of mandatory prison terms are imposed, the offender shall serve any mandatory prison term imposed under either division consecutively to any other mandatory prison term imposed under either division or under division (B)(1)(d) of this section, consecutively to and prior to any prison term imposed for the underlying felony pursuant to division (A), (B)(2), or (B)(3) of this section or any other section of the Revised Code, and consecutively to any other prison term or mandatory prison term previously or subsequently imposed upon the offender.

**Ellerbe's Argument**

{¶ 69} At page 15 of his brief, without analysis or citations to authority, Ellerbe baldly states there was "only one shooting" and therefore his sentence is contrary to law. It is unclear whether this statement applies to the consecutive nature of his sentences for the murders and felonious assaults, or solely the imposition of multiple gun specifications.

If an argument exists as to consecutive sentences, firearm specifications, or both, it is not this court's duty to develop those arguments.

{¶ 70} Regardless, either argument fails as the instant matter involved six separate victims. Counts one through ten of the indictment pertained to the murders of B.C. and J.B. Counts 11-14 pertained to the felonious assault of four separate victims, I.S., T.B., J.D., and N.B. Ellerbe therefore victimized more than one person making the harm separate and distinct.

{¶ 71} Further, Ellerbe was convicted of two or more or the qualifying offenses contained in R.C. 2929.14(B)(1)(g). Thus, pursuant to that statute, the trial court was required to impose consecutive prison terms for at least two of the firearm specifications accompanying those offenses, and was within its discretion to impose prison terms for the remaining specifications.

{¶ 72} The final assignment of error is overruled.

{¶ 73} For the reasons stated in our accompanying Opinion, the judgment of the Richland County Court of Common Pleas is affirmed.

{¶ 74} Costs to Appellant.


By: King, P.J.

Montgomery, J. and

Popham, J. concur.