[Cite as *Bogdanov v. Ahres*, 2021-Ohio-1322.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

|  |  |  |
|---|---|---|
| VLADIMIR BOGDANOV, | : | APPEAL NO. C-190660<br>TRIAL NO. A-1704199 |
| Plaintiff-Appellant, | : | |
| | : | *O P I N I O N.* |
| vs. | | |
| | : | |
| SOFIANE AHRES, | : | |
| and | : | |
| LM GENERAL INSURANCE<br>COMPANY, | : | |
| | : | |
| Defendants-Appellees. | : | |
| | : | |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: April 16, 2021

*Mezibov Butler, Brian J. Butler*, *Susan L. Butler*, and *Daniel J. Treadaway*, for Plaintiff-Appellant,

*Patsfall, Yeager & Pflum, Stephen J. Patsfall,* for Defendant-Appellee Sofiane Ahres,

*Law Offices of Raymond H. Decker, Jr., Molly Vance*, for Defendant-Appellee LM General Insurance Company.

**BERGERON, Presiding Judge.**

{¶1}    In this case arising out of a fender-bender, plaintiff-appellant Vladimir Bogdanov sued the other driver, claiming that the accident caused a disc herniation in his lower back. Despite admitting liability, the other driver contested whether the accident actually caused any injuries, offering up an expert to dispute causation. The case proceeded to trial and the jury found for the defendant. On appeal, Dr. Bogdanov faults the expert's testimony as tainted by hearsay (after the expert referenced unnamed medical studies) as well as permeated by leading questions. After reviewing this testimony in detail, however, we conclude that the trial court did not abuse its discretion in permitting the expert's testimony. We accordingly affirm the trial court's judgment.

I.

{¶2}    Dr. Bogdanov (the plaintiff is a medical doctor) was driving near his home when he and defendant-appellee Sofiane Ahres ran into each other in a slow-speed collision, with both drivers traveling about 5-10 miles per hour. Neither party complained of any injury at the scene, and Dr. Bogdanov drove his vehicle back home afterwards.

{¶3}    A couple of years later, however, Dr. Bogdanov sued Mr. Ahres for physical injury, alleging that the accident caused a disc herniation in his lower back. Although waiting quite a while to pursue his claim, Dr. Bogdanov testified that he began experiencing low back pain within a few days of the accident. To substantiate his testimony, he explained that he visited an orthopedic surgeon shortly after the accident, and that a subsequent MRI revealed a herniated disc in his lower back.

{¶4} For his part, Mr. Ahres did not contest liability for the accident—perhaps because his car ran into Dr. Bogdanov's. He did, however, dispute whether the accident caused any back injury. Mr. Ahres presented evidence that Dr. Bogdanov suffered from a long history of back problems, along with consuming Tramadol for years to manage the pain. Additionally, the MRI showing the disc herniation also revealed that Dr. Bogdanov had scoliosis, which can cause low back pain and other problems. Tying all of these threads together, Mr. Ahres's expert, Dr. Steven Wunder, assured the jury that this type of low-impact, T-bone collision could not have caused the disc herniation.

{¶5} In response, Dr. Bogdanov conceded that he had chronic back pain. But he insisted that his pain had previously been limited to his mid-back region. He also produced his own expert, who verified that the accident likely caused the herniated disc. Somewhat predictably, the trial devolved into a battle of the experts on the question of causation, and the jury sided with Mr. Ahres's expert, rendering a defense verdict.

{¶6} On appeal, Dr. Bogdanov marshals two assignments of error, focusing his attention on the testimony of Dr. Wunder. Dr. Bogdanov first takes issue with a reference the expert made to unnamed studies, criticizing this as inadmissible hearsay. Second, Dr. Bogdanov attacks the pervasive use of leading questions by counsel as he questioned Dr. Wunder. We address each assignment of error in turn.

II.

{¶7} In his first assignment of error, Dr. Bogdanov complains that the trial court abused its discretion in allowing Dr. Wunder to reference unnamed studies to support his opinion. More specifically, he maintains that Dr. Wunder injected

3

inadmissible hearsay when he commented: "So the scientific studies would show that—a hundred percent—that there's no way that this type of [T-bone] accident would cause a disc herniation. As I said before, the vertebrae will fracture before the disc ruptures."

{¶8} If the expert's statement constituted hearsay (as Dr. Bogdanov claims), it would be inadmissible unless some other law or rule specifically provided otherwise. Evid.R. 802. As relevant here, only one exception potentially applies— the learned treatise exception for expert witnesses. *See* Evid.R. 803(18). That exception provides that "statements contained in published treatises" are not excludable on hearsay grounds if they are "established as a reliable authority." *Id.* And although that standard of admissibility is low, the trial court has discretion to determine whether a treatise is reliable. *See Beard v. Meridia Huron Hosp.*, 106 Ohio St.3d 237, 2005-Ohio-4787, 834 N.E.2d 323, ¶ 20 ("Decisions regarding the admissibility of evidence are within the broad discretion of the trial court."); Staff Note to Evid.R. 803 ("The rule applies only to a learned treatise found by the judge to be a 'reliable authority' under Evid.R. 104(A)."); *Bradley v. Ohio Dept. of Transp.*, 10th Dist. Franklin Nos. 11AP-409 and 11AP-410, 2012-Ohio-451, ¶ 23 ("According to Evid.R. 803(18), an expert witness need only testify that a learned treatise is a reliable authority for a court to admit statements from that treatise."). We can easily dispense with this exception because the defense never laid the requisite foundation for admissibility of any learned treatise. Thus, the trial court was within its discretion to not apply the learned treatise exception. As a result, we must determine whether the trial court abused its discretion in finding Dr. Wunder's statement not hearsay. *See State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508,

4

¶ 97 ("Ordinarily, we review a trial court's hearsay rulings for an abuse of discretion.").

{¶9} "Hearsay" is any "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). And in applying this rule to an expert's reference to medical studies, we find the Ohio Supreme Court's decision in *Beard v. Meridia Huron Hosp.*, 106 Ohio St.3d 237, 2005-Ohio-4787, 834 N.E.2d 323, instructive. In *Beard*, the court held that "an expert witness may testify that his or her opinions are based, in part, on a review of professional literature." *Id.* at ¶ 1. And in explaining that holding, the court gave this oft-quoted explanation:

> There is a difference between a witness's referring to specific statements in professional literature as substantive evidence and an expert witness's referring to the literature as being part of the basis for that expert's opinion. While the former reference would be inadmissible hearsay, numerous courts in Ohio have held that the latter reference is admissible. We agree with the decisions in those cases.

(Emphasis deleted.) *Id.* at ¶ 24.

{¶10} The expert in *Beard* offered two opinions that were at issue: (1) that a surgeon had satisfied the requisite standard of care; and (2) that the patient's white-blood-cell count was high enough for the surgeon to operate. *Id.* at ¶ 28, 30. In the first opinion about the standard of care, the expert explained that his opinion aligned with findings "documented in the medical and surgical literature*." Id.* at ¶ 28. And the court found no flaw with this comment because the surgeon did not offer a

5

statement from the literature for its truth: "indeed, [the surgeon] did not offer any statement from the literature for any purpose." (Emphasis deleted.) *Id.* However, the court found the surgeon's second opinion "more problematic." *Id.* at ¶ 32. The surgeon specifically stated that surgery was appropriate because the medical literature indicated that surgery is safe when the white-blood-cell number exceeds 1,000. *Id.* at ¶ 31. This second statement triggered concerns because the surgeon "was apparently offering a statement from the literature." (Emphasis deleted.) *Id.* at ¶ 32. But even so, the Supreme Court determined that the trial judge acted within its discretion in allowing the testimony, for three reasons: (1) the surgeon did not provide precise statements from the literature; (2) the surgeon merely referred to the literature's conclusions to "explain[] the basis" for his opinion; and (3) the expert clarified "that the literature provided only a partial basis for his opinion." (Emphasis deleted.) *Id.*

{¶11} We acknowledge that Dr. Wunder's statement in this case probably falls closer to the latter statement at issue in *Beard* than the former. The expert appeared to summarize the findings of the unnamed studies as he wrapped up his conclusion by indicating that they "show that—a hundred percent—that there's no way that this type of [T-bone] accident would cause a disc herniation." At the same time, the guidance from *Beard* convinces us that the trial court did not abuse its discretion. First, like in *Beard*, Dr. Wunder did not provide any precise statement from the studies. He merely indicated that "the scientific studies would show" that this accident could not have caused Dr. Bogdanov's injury. Second, just as in *Beard*, the overall context of Dr. Wunder's testimony confirms that he mentioned these studies in order to provide justification for his own opinion. This disputed reference

6

represented just a small excerpt from the expert's fairly extensive testimony detailing the lack of any causative mechanism for Dr. Bogdanov's injury. Finally, the expert similarly clarified that he offered his opinion based upon his "education, training, and experience and [] independent medical examination." Viewed in the context of his entire testimony, it is apparent that the medical studies represented but a part of the fabric of Dr. Wunder's opinion, rather than a concrete basis for it. Consistent with the analysis in *Beard*, we cannot find an abuse of discretion on this record. We would also note that Dr. Bogdanov's attorney had every opportunity to challenge the expert's reference to the unnamed studies on cross-examination, but elected not to. For all of the reasons above, we conclude that the trial court did not abuse its discretion and overrule Dr. Bogdanov's first assignment of error.

III.

{¶12}  In his second assignment of error, Dr. Bogdanov argues that the trial court abused its discretion in allowing defense counsel to utilize a blizzard of leading question when examining Dr. Wunder. Evidence Rule 611(C) provides: "Leading questions should not be used on the direct examination of a witness except as may be necessary to develop the witness' testimony." Nonetheless, "[t]he trial court has discretion to permit leading questions on direct examination." *State v. Lee*, 1st Dist. Hamilton No. C-160294, 2017-Ohio-7377, ¶ 20.

{¶13} Although Dr. Bogdanov proclaims that 70 instances of leading questions saturated the record, he only identifies three sets of questions with any specificity in his appellate brief. Therefore, we confine our review to this trio of questions, and we decline the invitation to scour the record for the other questions or to speculate on their prejudicial effect. *See id.* at ¶ 21 (refusing a leading question

7

argument because the appellant "ha[d] not analyzed any specific questions or explained how he was prejudiced."), citing *McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, at ¶ 264 (rejecting a misleading question argument because the defendant "[did] not analyze any specific questions asked or how they prejudiced him."). The parties also debate whether objections to these questions were properly preserved, but we'll assume for sake of argument that they were. Therefore, we review these matters for abuse of discretion.

{¶14} In the first set of questions, defense counsel asked the following:

And, in fact, there's quite a number of plaintiffs' attorneys that think so highly of your ability and your credibility that they hire you as well. Is that correct?

* * * *

In fact, Doctor, there are only a select number of doctors in the area who have the education, training and experience and credentials to do quality independent medical examination?

* * * *

And, Doctor, are independent medical examinations customary and necessary in the medical and legal communities?

{¶15} Unfortunately, Dr. Bogdanov does little more than identify these as leading questions, perhaps indirectly claiming prejudice because the leading question bolstered the expert's credibility. However, in reviewing his objection, the trial court explained: "He's a frequent expert witness here, and I'd have to say that based on my own personal knowledge of Dr. Wunder, he does have the ability to testify as to what, how important [independent medical examinations] are to the

8

legal community because that's all he does." Furthermore, we fail to see how this type of routine witness-credentialing affected the trial in any way. Parties routinely highlight the qualifications and backgrounds of their experts. Thus, we decline to find that the trial court abused its discretion in permitting this first set of questions.

{¶16} The remaining two sets of questions occurred as defense counsel highlighted Dr. Bogdanov's history with back pain. Defense counsel first queried:

> And [Dr. Bogdanov] had his chronic low back pain even before he moved to Cincinnati, correct?

{¶17} The attorney then later followed up:

> There's no indication in [the opposing expert's] report that [Dr. Bogdanov] was taking Tramadol pain medication for back problems before the accident, correct? * * * And Doctor, that would be an inaccurate history as well, correct?

{¶18} Dr. Bogdanov argues that these two sets of questions unfairly discredited him—and his own expert—by portraying them as dishonest. But the facts that Dr. Bogdanov had previously experienced back pain, and that he had taken Tramadol, had already been well-established. And if the leading question prompted the expert to overstep, cross-examination surely could have cured any exaggeration (which might have damaged the expert's own credibility). In any event, we fail to see how allowing these two leading questions constituted an abuse of discretion given the entire record of the trial, nor do we see any prejudicial impact from them that might command reversal. We therefore overrule Dr. Bogdanov's second assignment of error.

9

\* \* \*

{¶19} In light of the foregoing analysis, we overrule both of Dr. Bogdanov's assignments of error and affirm the judgment of the trial court.

Judgment affirmed.

**WINKLER** and **BOCK, JJ.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion