[Cite as *State v. Williams*, 2025-Ohio-1345.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NOS. C-240409 |
| | | C-240410 |
| Plaintiff-Appellee, | : | C-240411 |
| | | TRIAL NOS. B-2304341 |
| vs. | : | B-2400196 |
| | | B-2400924 |
| ANTHONY WILLIAMS, | : | |
| Defendant-Appellant. | : | *O P I N I O N* |

Criminal Appeals From: Hamilton County Court of Common Pleas

Judgments Appealed From Are: Affirmed

Date of Judgment Entry on Appeal: April 16, 2025

*Connie M. Pillich*, Hamilton County Prosecuting Attorney, and *Ronald W. Springman, Jr.*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Bryan R. Perkins*, for Defendant-Appellant.

**Bock, Judge.**

**{¶1}** In these consolidated appeals, defendant-appellant Anthony Williams asks us to consider whether either his alleged incompetence to stand trial or the trial court's misstatement about his arson-registration duty rendered his guilty pleas unknowing, unintelligent, and involuntary. Williams also challenges his sentences.

**{¶2}** We hold that the trial court did not err when it accepted Williams's guilty pleas after finding Williams competent to stand trial. The trial court based its competency finding on a psychologist's competency report, to which Williams stipulated. The stipulated report accounted for his history, mental-health issues, and concerning behavior and concluded that Williams was competent to stand trial.

**{¶3}** Moreover, the trial court's misstatement regarding Williams's duty to register as an arson offender did not render his guilty pleas unknowing, unintelligent, or involuntary. Williams failed to show that the trial court's misstatement affected his decision to plead guilty.

**{¶4}** Finally, the trial court did not err by imposing consecutive sentences. Williams failed to raise the issue below and failed to develop a plain-error argument on appeal. Therefore, Williams cannot show that his jointly-recommended sentences are not authorized by law.

**{¶5}** We overrule the two assignments of error and affirm the convictions.

### *I.    Factual and Procedural History*

**{¶6}** In September 2023, the State charged Williams with nine counts of aggravated arson in violation of R.C. 2909.02(A)(1) after he allegedly used "fire or explosion" to "knowingly create a substantial risk of serious physical harm" to nine victims. The State also charged Williams with aggravated arson in violation of R.C. 2909.02(A)(2), arson in violation of R.C. 2909.03(A)(1), and burglary in violation of

R.C. 2911.12(A)(1). And while he was awaiting trial in jail, Williams was charged with assaulting a corrections officer in violation of R.C. 2903.13(A). Months later, he was charged with vandalizing the jail in violation of R.C. 2909.05(B)(1)(a).

**{¶7}** At a November 2023 hearing, the trial court expressed "serious concern" over reports that Williams had refused to take medication prescribed for bipolar disorder and had threatened to weaponize feces and urine in the jail. The trial court ordered Williams "to sit down with one of the doctors from the Court Clinic" for an evaluation of his mental health and ability to assist with his defense. That same month, Williams filed two pro se motions to "Stop Mental Health Evaluation" and two motions to dismiss his attorneys.

**{¶8}** Dr. Davis, a forensic psychologist, interviewed Williams the following month. In her report, Dr. Davis recited Williams's history and issues in jail, and concluded, "to a reasonable degree of psychological certainty, [Williams] is currently capable of understanding the nature and objective of the proceedings against him and is currently capable of assisting counsel in preparing for his defense." The trial court found Williams competent to stand trial under R.C. 2945.37 based on "the testimony and/or written report" of Dr. Davis.

**{¶9}** While Williams was appointed new attorneys, he filed two pro se motions in early 2024 to dismiss his charges and to invoke his right to be present in court under Crim.R. 43. He also filed a personal letter to the trial court judge.

**{¶10}** At a hearing in February 2024, Williams requested a second competency evaluation. He explained that, among other things, he could not "get the right . . . psych meds because they were crushing them due to the . . . jailhouse policy." The trial court appointed Dr. Dreyer, a psychologist, to conduct another forensic evaluation of Williams and issue a report. Later that month, Williams filed a pro se

motion to remove the trial court judge from the case.

**{¶11}** In an April 2024 competency hearing, Williams's trial counsel stipulated to the competency report. Like Dr. Davis, Dr. Dreyer concluded that Williams was "capable of understanding the nature and objective of the proceedings against him[,] . . . capable of assisting counsel in preparing for his defense," and competent to stand trial. In its entry, the trial court once again found Williams competent to stand trial and "capable of understanding the nature and objective of the proceedings against him/her, and of presently assisting in his/her defense."

**{¶12}** In May 2024, Williams pleaded not guilty by reason of insanity in all three cases and requested a clinical evaluation. The trial court ordered a psychiatric evaluation. Williams, unhappy with his defense, moved to dismiss one of his attorneys.

**{¶13}** But the following month, Williams withdrew his pleas and pleaded guilty under a plea agreement encompassing all three cases. In exchange for Williams's guilty pleas, the State amended four aggravated-arson counts to attempted aggravated arson in violation of R.C. 2909.02(A)(2), a third-degree felony, and dismissed the remaining aggravated-arson, arson, and burglary counts.

**{¶14}** On the written plea agreement, Williams indicated that he understood that an attempted-aggravated-arson conviction carries a duty to register as an arson offender. The plea agreement also included a "potential sentence" consisting of consecutive two-year sentences for the four attempted-aggravated-arson counts, for an aggregate eight-year sentence. He also pleaded guilty to the assault and vandalism charges and agreed to a one-year sentence for each offense. While the trial court ordered the one-year sentence for the assault charge to run concurrently with his one-year vandalism sentence, it ordered those concurrent sentences to run consecutively

to his eight-year-aggregate sentence for the attempted-aggravated-arson charges. All told, the plea agreement recommended an aggregate nine-year sentence.

{¶15} At his plea hearing, the trial court informed Williams that the attempted-aggravated-arson charges carry a requirement that, "upon a conviction, you will be an arson – you have to register as an arson offender, okay, for life." It explained that there would be "a hearing on that separately and go over it and file paperwork," but he "would have to register with the sheriff" and "after ten years, you can go ahead and appeal to have yourself removed off that list." The prosecutor confirmed the trial court's understanding of Williams's registration duty. The trial court accepted the guilty pleas and found Williams guilty.

{¶16} At his sentencing hearing, the trial court reviewed the arson-registry requirements and Williams's registration duties. Williams's attorney explained that "the prosecutor and the defense have agreed on a nine-year prison term" and asked the trial court "to impose that prison term." Williams's attorney represented that Williams's emotional regulation and capacity to work with others was improving. Williams apologized for the pain and suffering he caused, but said he regretted not "killing [E.W.] for what she did" to Williams in the apartment that he set ablaze.

{¶17} The trial court recited the "overriding principles and purposes of felony sentencing" and its duty to "look at the sentencing factors as written . . . in [R.C.] 2929.12." Relevant to those principles and factors, the trial court recognized the severe "physiological and economic harm" caused by Williams in the arson case. Plus, Williams has "a criminal record" and "admitted to the drug use." The trial court also recognized that Williams struggles with mental health and was "the most honest person" and "most self-aware" defendant that has come before the trial court.

{¶18} The trial court imposed the agreed nine-year-aggregate sentence.

### II. Analysis

**{¶19}** On appeal, Williams challenges his guilty pleas and sentences in two assignments of error. First, he argues that the trial court should not have accepted his guilty pleas, which he claims were unknowingly, unintelligently, and involuntarily entered. Second, he maintains that the record does not support consecutive sentences. We overrule both assignments of error.

### A. <u>Williams knowingly, intelligently, and voluntarily pleaded guilty</u>

**{¶20}** Williams claims that his guilty pleas were unknowingly, unintelligently, and involuntarily entered for two reasons. First, he contends that the trial court should have found him incompetent to plead guilty. Second, he argues that the trial court's misinformation regarding his duty to register as an arson offender rendered his guilty pleas unknowing, unintelligent, and involuntary.

#### 1. <u>Williams was competent to plead guilty</u>

**{¶21}** Williams maintains that the trial court should have held a competency hearing and found that he was incompetent to stand trial due to his traumatic childhood, mental-health history, and behavior during the pendency of his case.

**{¶22}** We review the trial court's competency determination for an abuse of discretion. *State v. Stutzman*, 2021-Ohio-995, ¶ 7 (9th Dist.), citing *State v. Were,* 2008-Ohio-2762, ¶ 53. A trial court's competency determination will not be reversed if it "'was supported by competent, credible evidence.'" *State v. Wisler*, 2019-Ohio-2363, ¶ 10 (1st Dist.), quoting *State v. Stanley*, 121 Ohio App.3d 673, 686 (1st Dist. 1997). We defer to the trial court on issues of competency because it "'see[s] and hear[s] what goes on in the courtroom.'" *State v. Vrabel,* 2003-Ohio-3193, ¶ 33, quoting *State v. Cowans*, 87 Ohio St.3d 68, 84 (1999).

**{¶23}** Due process forbids the prosecution and conviction "of an individual who lacks 'mental competency.'" *Indiana v. Edwards*, 554 U.S. 164, 170 (2008). As a long-standing principle of due process, "a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial." *Drope v. Missouri,* 420 U.S. 162, 171 (1975). Legal incompetency "require[s] suspension of the criminal trial until such time, if any, that the defendant regains the capacity to participate in his defense and understand the proceedings against him." *Medina v. California*, 505 U.S. 437, 448 (1992). A criminal defendant deemed "not competent to stand trial is not competent to enter a negotiated plea." *State v. Smith*, 2020-Ohio-3454, ¶ 10 (8th Dist.).

**{¶24}** In Ohio, criminal defendants are presumed competent to stand trial. R.C. 2945.37(G). Incompetency is defined by R.C. 2945.37(G) as being incapable "of understanding the nature and objective of the proceedings against the defendant or of assisting in the defendant's defense." To that end, due process requires a "'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding [and] a rational as well as factual understanding of the proceedings against him.'" *Cooper v. Oklahoma*, 517 U.S. 348, 354 (1996), quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960).

**{¶25}** Williams argues that the trial court erred when it failed to hold an evidentiary hearing on his competence to stand trial. In support, he cites the Supreme Court of Ohio's declaration that, "[T]here is no question that where the issue of the defendant's competency to stand trial is raised prior to the trial, a competency hearing is mandatory." *State v. Bock*, 28 Ohio St.3d 108, 109 (1986). And a "failure to observe procedures adequate to protect a defendant's right not to be tried or convicted while

incompetent to stand trial deprives him of his due process right to a fair trial." *Drope*, 420 U.S. at 173. So, R.C. 2945.37(B) requires a hearing once the issue of the defendant's competence is raised.

**{¶26}** But as the State points out, Williams stipulated to Dr. Dreyer's report at the competency hearing. The law governing competency hearings places the burden on the defendant to overcome the presumption of competence and prove, by a preponderance of the evidence, that he is not competent to stand trial. *See State v. Roberts,* 2013-Ohio-4580, ¶ 84, quoting R.C. 2945.37(G); *see also State v. Stanley,* 121 Ohio App.3d 673, 685 (1st Dist. 1997).

**{¶27}** At the competency hearing, both the State and defendant may submit evidence and a "written report of the evaluation of the defendant may be admitted into evidence at the hearing by stipulation." R.C. 2945.37(E). Stipulations are "'voluntary agreement[s] entered into between opposing parties concerning the disposition of some relevant point in order to avoid the necessity for proof on an issue.'" *Torres v. Concrete Designs, Inc.,* 2019-Ohio-1342, ¶ 86 (8th Dist.), quoting *Wilson v. Harvey*, 2005-Ohio-5722, ¶ 12 (8th Dist.). A stipulation renders it unnecessary to prove a stipulated fact. *Torres* at ¶ 86. When the trial court accepts the parties' stipulation, that "'stipulation is binding upon the parties as 'a fact deemed adjudicated for purposes of determining the remaining issues in the case.'" *Id.*, quoting *Bodrock v. Bodrock*, 2016-Ohio-5852, ¶ 19 (8th Dist.), quoting *Dejoseph v. Dejoseph*, 2011-Ohio-3173, ¶ 35 (7th Dist.).

**{¶28}** In the context of a criminal defendant's competence, a defendant's stipulation to a competency report waives the necessity of a competency hearing. *State v. Allen*, 2020-Ohio-4444, ¶ 17 (1st Dist.). Competency hearings are only "necessary where the competency issue is raised and maintained." *State v. Smith*, 2011-Ohio-

2400, ¶ 5 (8th Dist.). Defendants may stipulate to both a competency report's admissibility and to the report itself. *State v. O'Neill*, 2004-Ohio-6805, ¶ 21 (7th Dist.).

**{¶29}** Williams does not dispute that he stipulated to the competency report. He argues that the trial court had to hold a competency hearing due to "his history and conduct." But the stipulated report catalogued the profound traumas that marked both his childhood and adult years, his mental-health diagnoses and treatment, and his substance-abuse issues. And at multiple points, the stipulated report references Williams's "issues" in jail and his interactions with his attorneys and the trial court. Absent any additional indicia of incompetence, Williams's stipulation to the competency report waived his right to a hearing.

**{¶30}** Turning to the question of his competence to plead guilty, the trial court did not err when it found Williams competent to stand trial and accepted his guilty pleas. Dr. Dreyer's report concluded that despite his experiences and conduct, Williams "demonstrated an adequate understanding of the charges against him, as well as the seriousness of this or that," the roles of courtroom personnel, the potential outcomes of the case, legal strategies, and legal options available to him. Dr. Dreyer determined that Williams "is capable of relating adequately to an attorney, disclosing available facts to an attorney, challenging prosecuting witnesses, testifying relevantly, comprehending instruction, and evaluating legal advice." Plus, Dr. Dreyer found that Williams can manage his behavior during trial. Dr. Dreyer found him competent. By stipulating to Dr. Dryer's report, Williams stipulated to her conclusion that Williams was competent to stand trial. Therefore, Williams was competent to enter guilty pleas.

**{¶31}** Moreover, Williams's behavior and mental-health issues do not undermine the trial court's competency determination. A defendant's lack of competency to stand trial "must not be equated with mere mental or emotional

instability or even outright insanity." *Bock*, 28 Ohio St.3d at 110. Competency to stand trial is a narrower concept that turns on the defendant's capacity to "understand[] the nature and objective of the proceedings against the defendant or [to] assist[] in the defendant's defense." R.C. 2945.37(E). Erratic behavior, while concerning, does not mandate a finding of incompetency. *See Vrabel*, 2003-Ohio-3193, at ¶ 29 ("The fact that [defendant] continually behaved erratically does not undermine the trial court's findings of his competence to stand trial."). Likewise, discord and disagreements between a defendant and his trial attorney "alone do not show incompetence or an inability to assist in the defense." *State v. Austin*, 2010-Ohio-6583, ¶ 69 (7th Dist.); *see State v. Berry*, 72 Ohio St.3d 354, 361 (1995) ("[A]ppellant's failure to cooperate with counsel does not indicate that appellant was incapable of assisting in his defense.").

**{¶32}** Dr. Dreyer's report constitutes credible evidence of Williams's competency to stand trial. Dr. Dreyer considered the erratic behavior cited by Williams and still found him competent to stand trial. And Williams stipulated to the report. Under these circumstances, the trial court did not abuse its discretion in finding Williams competent to stand trial and accepting his guilty pleas.

2. *The trial court's misstatement about Williams's arson-offender registration duties did not render his guilty pleas unknowing, unintelligent, or involuntary*

**{¶33}** Williams argues that the trial court's misstatements about his duty to register as an arson offender rendered his guilty pleas unknowing and unintelligent.

**{¶34}** Before a trial court accepts a guilty plea, it must confirm that the defendant is "knowingly, intelligently, and voluntarily" pleading guilty. *State v. Carver*, 2019-Ohio-3634, ¶ 19 (1st Dist.). Plea hearings are governed by Crim.R. 11, which directs a trial court considering a defendant's guilty plea to a felony offense to

"[d]etermine that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved," and confirming the defendant's understanding of both the effect of the plea and the constitutional rights waived with a guilty plea. Crim.R. 11(C)(2).

{¶35} A trial court's failure to confirm that a defendant is voluntarily pleading guilty while understanding the effect of the plea, the nature of the charges, the maximum penalty, and the constitutional rights being waived "renders enforcement of the plea unconstitutional under both the United States Constitution and the Ohio Constitution." *State v. Engle*, 74 Ohio St.3d 525, 527 (1996), citing *Kercheval v. United States*, 274 U.S. 220, 223 (1927). A defendant's guilty plea is voluntarily entered when it is made "with a full understanding of the consequences of his plea." *State v. Foster*, 2018-Ohio-4006, ¶ 19 (1st Dist.).

{¶36} In general, a guilty plea influenced by a misstatement of law is neither knowing nor intelligent. *See State v. Brooks*, 2024-Ohio-420, ¶ 13 (4th Dist.). Here, Williams asserts that the trial court's misstatement about his duty to register as an arson offender rendered his plea unknowing and unintelligent.

{¶37} Under R.C. 2909.14(A), an arson offender "shall be provided notice of [his] duty to register personally with the sheriff of the county in which the arson offender resides." But the trial court must inform the arson offender of his duty only if "the judge does not sentence the arson offender to a prison term." R.C. 2909.14(A)(2).

{¶38} At the plea hearing, the trial court informed Williams that he would be able to seek removal from the arson registry after ten years. That information is inconsistent with the arson-registry statute, which requires an arson offender "to reregister annually . . . until the offender's death." R.C. 2909.15(D)(2)(a). While the trial court can limit an arson offender's registration period to ten years, that limitation

must follow "a request from the prosecutor and the investigating law enforcement agency." R.C. 2909.15(D)(2)(b).

**{¶39}** Under Ohio law, an offender's duty to register as an arson offender is considered a collateral, remedial consequence of the underlying offense, rather than a punitive consequence. *State v. Rogers*, 2017-Ohio-9161, ¶ 25 (1st Dist.); *see State v. Jones,* 2017-Ohio-413, ¶ 26 (6th Dist.); *State v. Perdue*, 2022-Ohio-722, ¶ 15 (2d Dist.). Because the arson-registration obligation is not a punishment, the trial court was not required to inform Williams of the registration and notification requirements. *See also State v. Rogers,* 2017-Ohio-9161, ¶ 25 (8th Dist.). But because the trial court volunteered this misinformation, Williams "must show that he suffered prejudice from the trial court's legal misadvisement." *State v. Kinney,* 2018-Ohio-404, ¶ 25 (1st Dist.). To show prejudice, Williams must demonstrate that but for the misinformation, he would not have pleaded guilty. *Id.*

**{¶40}** Williams has made no attempt on appeal to show how the trial court's misadvisement affected his decision to plead guilty. Williams, as the appellant, carries the burden of demonstrating the trial court's error on appeal. *See Twang, LLC v. City of Cincinnati*, 2024-Ohio-6077, ¶ 92 (1st Dist.). This court has repeatedly explained that it "'will not create an argument in support of an assignment of error where an appellant fails to develop one.'" *Id.*, quoting *Fontain v. Sandhu*, 2021-Ohio-2750, ¶ 15 (1st Dist.). Under these circumstances, the trial court's misadvisement did not render his guilty pleas unknowing, unintelligent, or involuntary.

**{¶41}** For these reasons, we overrule Williams's first assignment of error.

## B. *Williams forfeited his sentencing challenge*

**{¶42}** In his second assignment of error, Williams challenges the trial court's imposition of consecutive sentences on two bases. First, he contends that the record

does not support the imposition of consecutive sentences. Second, he argues that his consecutive sentences violate principles of double jeopardy.

**{¶43}** Under R.C. 2953.08(D)(1), a trial court's imposition of a jointly-recommended sentence is not subject to review if it is authorized by law. R.C. 2953.08(D)(1); *State v. Sergent*, 2016-Ohio-2696, ¶ 15; *see State v. Jackson,* 2020-Ohio-80, ¶ 16 (1st Dist.). And when a trial court imposes jointly-recommended consecutive sentences, it is not required to make R.C. 2929.14(C)(4)'s consecutive-sentences findings. *Sergent* at ¶ 43.

**{¶44}** Williams argues that his consecutive sentences are contrary to law because they violate the constitutional protection against double jeopardy. The Fifth Amendment to the United States Constitution guarantees that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." Likewise, under Article I, Section 10 of the Ohio Constitution, "[n]o person shall be twice put in jeopardy for the same offense." Relevant here, these constitutional protections prohibit "'multiple punishments for the same offense.'" *State v. Ruff*, 2015-Ohio-995, ¶ 10, quoting *North Carolina v. Pearce*, 395 U.S. 711, 717, (1969). This principle is codified in R.C. 2941.25(A)(1), which prohibits multiple convictions for "the same conduct by defendant [that] can be construed to constitute two or more allied offenses of similar import." This prohibition is inapplicable where "the defendant's conduct . . . results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each." R.C. 2941.25(A)(2). The Supreme Court of Ohio has held that conduct placing multiple individuals at risk "could support multiple convictions because the offenses were of dissimilar import." *Ruff* at ¶ 23.

**{¶45}** Williams argues that the record lacks any indication that he "had a separate animus for each of the alleged victims in Counts 1-4." But Williams failed to

13

raise these double-jeopardy and allied-offenses issues to the trial court. Failing to raise allied-offenses or double-jeopardy issues "'forfeits all but plain error[.]'" *State v. Morgan*, 2018-Ohio-3198, ¶ 24 (2d Dist.), quoting *State v. Rogers*, 2015-Ohio-2459, ¶ 3; *see State v. Bailey,* 2022-Ohio-4407, ¶ 16; *see also State v. Mingo,* 2024-Ohio-543, ¶ 58 (9th Dist.). And Williams has not raised a plain-error argument on appeal. This court has repeatedly cautioned appellants that it "will not construct a claim of plain error on a defendant's behalf if the defendant fails to argue plain error on appeal."[1] *State v. Patton*, 2021-Ohio-295, ¶ 25 (1st Dist.), quoting *State v. Jones*, 2018-Ohio-4754, ¶ 46 (1st Dist.).

**{¶46}** We overrule the second assignment of error.

### III.   Conclusion

**{¶47}** We overrule the two assignments of error and affirm the convictions.

Judgments affirmed.

**KINSLEY, P.J.,** and **NESTOR, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.

---

[1] Inexplicably, both Williams and the State dispute whether the single fire in this case put more than one individual at risk in accordance with *State v. Johnson*, 2020-Ohio-568 (8th Dist.), and other cases, where courts have held that multiple arson convictions may be appropriate where a single fire places multiple people at risk. *See id.* at ¶ 22; *see also State v. Franklin*, 2002-Ohio-5304, ¶ 48. But these arguments miss the mark. Both *Johnson* and *Franklin* addressed consecutive sentences for aggravated arson in violation of R.C. 2909.02(A)(1), which prohibits knowingly "[c]reat[ing] a substantial risk of serious physical harm *to any person* other than the offender" by means of fire or explosion. But the plea agreement amended counts one through four to violations of R.C. 2909.02(A)(2), which prohibits knowingly "[c]aus[ing] physical harm to *any occupied structure*" by means of fire or explosion. While Williams is correct that the facts in the record are sparse, the victim-impact statements indicate that the three victims identified in counts two through four occupied the same apartment. Because Williams has not argued that a single apartment cannot constitute multiple occupied structures as defined by R.C. 2909.01(C), the State has had no opportunity to respond. As an appellate court, we are limited to considering "'legal questions presented and argued by the parties before [us].'" *Cable Busters, LLC v. Mosley,* 2020-Ohio-3442, ¶ 8 (1st Dist.), quoting *State v. Quarterman*, 2014-Ohio-4034, ¶ 19.