[Cite as *Kelley v. Horton*, 2025-Ohio-5252.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| NANETTE KELLEY, | : | APPEAL NO. C-240644 |
| | | TRIAL NO. A-2300099 |
| Plaintiff-Appellant, | : | |
| vs. | : | |
| EDWARD S. HORTON, JR., M.D., | : | *JUDGMENT ENTRY* |
| ZAINAB P. CONTRACTOR, M.D., | : | |
| GROUP HEALTH TRIHEALTH PHYSICIAN PARTNERS, | : | |
| | : | |
| TRIHEALTH G, LLC, | : | |
| TRIHEALTH H, LLC, | : | |
| TRIHEALTH HOSPITAL, INC., | : | |
| and | : | |
| TRISTATE IMG, INC., | : | |
| Defendants-Appellees. | : | |
| | : | |

This cause was heard upon the appeal, the record, the briefs, and arguments.

For the reasons set forth in the Opinion filed this date, the judgment of the trial court is affirmed.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs be taxed under App.R. 24.

The court further orders that (1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and (2) the mandate be sent to the trial court for execution under App.R. 27.

# OHIO FIRST DISTRICT COURT OF APPEALS

**To the clerk:**

**Enter upon the journal of the court on 11/21/2025 per order of the court.**

**By:**_____
         **Administrative Judge**

**[Cite as *Kelley v. Horton*, 2025-Ohio-5252.]**

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

|  |  |  |  |
|---|---|---|---|
| NANETTE KELLEY, | : | APPEAL NO. | C-240644 |
|  |  | TRIAL NO. | A-2300099 |
| Plaintiff-Appellant, | : |  |  |
| vs. | : |  |  |
|  |  | *O P I N I O N* |  |
| EDWARD S. HORTON, JR., M.D., | : |  |  |
| ZAINAB P. CONTRACTOR, M.D., | : |  |  |
| GROUP HEALTH TRIHEALTH PHYSICIAN PARTNERS, | : |  |  |
|  | : |  |  |
| TRIHEALTH G, LLC, | : |  |  |
| TRIHEALTH H, LLC, | : |  |  |
| TRIHEALTH HOSPITAL, INC., | : |  |  |
| and | : |  |  |
| TRISTATE IMG, INC., | : |  |  |
| Defendants-Appellees. | : |  |  |
|  | : |  |  |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: November 21, 2025

*The Donahey Law Firm, LLC, Danny M. Newman, Jr., Flowers & Grube, Louis E. Grube* and *Kendra Davitt*, for Plaintiff-Appellant Nanette Kelley,

*Calderhead, Lockemeyer & Peschke, David C. Calderhead* and *Evan S. Miller*, for Defendants-Appellees Edward S. Horton, Jr., M.D., and TriState IMG, Inc.,

*Rendigs, Fry, Kiely & Dennis, LLP*, and *Brian D. Goldwasser*, for Defendants-

# OHIO FIRST DISTRICT COURT OF APPEALS

Appellees Zainab P. Contractor, M.D., Group Health TriHealth Physician Partners, TriHealth G, LLC, TriHealth H, LLC, and TriHealth Hospital Inc.

**MOORE, Judge.**

{¶1} Plaintiff-appellant Nanette Kelley appeals the judgment of the Hamilton County Court of Common Pleas after a jury found co-defendants and co-appellees Dr. Edward S. Horton, Jr., M.D., Dr. Zainab P. Contractor, M.D., Tristate IMG, Inc., and several TriHealth subsidiaries (collectively, "defendants"), had not committed medical malpractice. During the course of the trial below, Kelley argued that defendants' medical malpractice caused Kelley to lose vision in her right eye.

{¶2} Kelley now raises two assignments of error. First, Kelley alleges the court erred in allowing defendants to cross-examine one of Kelley's witnesses with a publication under the learned-treatise exception without first requiring defendants to lay a proper foundation. Second, Kelley argues the court's jury instructions on remote, intervening, and superseding causation were legally inaccurate and prejudiced her.

{¶3} For the reasons set forth below, the trial court's judgment is affirmed.

## I. Factual History

{¶4} On January 10, 2023, Kelley filed a complaint against defendants, alleging claims for medical malpractice. From September 26 through October 4, 2024, the court held a seven-day jury trial.

{¶5} In October 2019, Kelley had her first visit with defendant Dr. Contractor, a neurologist and headache specialist at TriHealth Hospital. On Kelley's diagnostic form, Kelley stated that she had a 30-year history of headaches, that the number of headache days she experienced monthly increased from one to three and then from three to five, that the location of her headaches had recently shifted from the left to right side of her head, and that her right temple would become sore to the touch during headache flareups. Material to this appeal, Kelley was 50 years old when she visited with Dr. Contractor and had previously been diagnosed with Chronic

Kidney Disease in 2016.

{¶6} At the close of the visit, Dr. Contractor ordered a magnetic resonance imaging ("MRI") scan of Kelley's brain without intravenous ("IV") fluid contrast. Dr. Contractor explained she normally orders a MRI scan without IV contrast to establish a baseline, and that she would request a scan with IV contrast if she had reason to believe a tumor was present. In her deposition, Dr. Contractor stated that because of Kelley's history of Chronic Kidney Disease, an MRI scan without contrast was appropriate for initial screening purposes.

{¶7} On December 6, 2019, Kelley underwent the MRI scan. Dr. Contractor's notes reviewing the scan identified a few "white matter" abnormalities, but noted that these were consistent with patients of Kelley's age, and that it was unlikely that these were the cause of Kelley's headaches. Dr. Contractor believed that these abnormalities were attributable to Kelley's age or her history of Chronic Kidney Disease. At the close of the visit, Dr. Contractor scheduled a follow-up visit with Kelley in December 2020.

{¶8} Defendant Dr. Horton, a radiologist, also testified that he interpreted Kelley's scans. Dr. Horton's report interpreting the 2019 MRI scan concluded that there were no significant abnormalities, such as tumors or hemorrhaging present.

{¶9} Despite Dr. Contractor's care plan, Kelley never returned for her follow-up. Kelley explained that she was reluctant to complete her follow-up with Dr. Contractor, since this was during the height of the COVID-19 pandemic. Kelley testified that she continued to work with her primary-care provider throughout 2020 and most of 2021 and that her symptoms had not worsened or changed. However, in December 2021, Kelley's vision in her right eye abruptly worsened, resulting in near total vision loss.

{¶10} After Kelley's ophthalmologist could not resolve the issue, she was

referred to a neurologist and underwent MRI scans with and without contrast. Dr. Horton again interpreted Kelley's MRI, and concluded that Kelley had a meningioma that had encompassed her right optical nerve.[1] Despite surgery and radiation treatments, Kelley's vision in her right eye could not be restored. Kelley recalled that when speaking with her neurosurgeon and radiologist she learned that the meningioma was identifiable in her 2019 MRI scan.

{¶11} Dr. Horton testified that he produced a report for both of Kelley's MRI scans. Dr. Horton conceded that when comparing the 2022 scan with the 2019 scan, he could observe a tumor present within the initial scan. However, Dr. Horton argued that his initial interpretation did not breach the standard of care. Dr. Horton explained that the tumor was only detectable with the benefit of hindsight, and that many of the abnormalities that would indicate the presence of a tumor were too subtle for Dr. Horton to have conclusively determined the presence of a meningioma near Kelley's optic nerve.

{¶12} In addition to Kelley, Dr. Contractor, and Dr. Horton, the court heard testimony from several experts. On whether Dr. Contractor breached the standard of care, the parties called competing neurologists. Kelley introduced Dr. Mankowski, while defendants called Dr. Merkler. On whether Dr. Horton breached the standard of care, the parties called competing radiologists. Kelley relied upon Dr. Berger, while defendants called Dr. Cizek. Defendants also called Dr. Volpe, a neuro-opthamologist, who testified that detection of the tumor in 2019-2020 would not have prevented Kelley from losing her vision in 2021.

---

[1] A meningioma is a tumor that grows from the membranes that surround the brain and spine, and may damage nerves near the brain as the tumor grows. *See* Mayo Clinic, *Meningioma*, https://www.mayoclinic.org/diseases-conditions/meningioma/symptoms-causes/syc-20355643 (accessed Nov. 6, 2025) [https://perma.cc/QQ3Y-AEJH].

{¶13}   Material to this appeal, Dr. Mankowski testified that given Kelley's symptoms, Dr. Contractor's decision to order an MRI scan without IV contrast breached the standard of care. During cross-examination, Dr. Mankowski was asked if he was aware of a guideline from the American College of Radiology ("ACR"), the ACR appropriateness criteria for headaches, and whether neurologists were involved in developing the appropriateness criteria. Dr. Mankowski answered that he was generally aware of all three. When asked whether Dr. Mankowski was "aware that the American College of Radiology --," counsel for Kelley objected.

{¶14}   The parties discussed the objection in chambers. Kelley emphasized two points, that Dr. Mankowski was not a radiologist and therefore the reference to the ACR was irrelevant, and that defendants failed to share the document in advance of trial. At no point during this initial objection did Kelley contend that the ACR guideline was inadmissible hearsay, argue that defendants failed to set forth the proper foundation, or assert that the ACR guideline failed to qualify as a learned treatise. The court overruled Kelley's objection and permitted the defense to continue its line of questioning. After recommencing cross-examination, counsel asked Dr. Mankowski whether he was aware that the ACR's appropriateness criteria considered an MRI without IV contrast appropriate, to which Dr. Mankowski answered that he was not aware. Once the parties completed their respective examinations, the court dismissed Dr. Mankowski. At the start of the proceedings the next day, Kelley revisited her objection and raised a hearsay objection, arguing that the ACR guideline was not admissible under the learned-treatise hearsay exception under Evid.R. 803(18). Again, the court overruled Kelley's objection.

{¶15}   During the parties' charging conference, which took place before the defense completed its case and the parties made their closing arguments, the parties

discussed the proposed jury instructions. Kelley objected that the "remote, intervening, and superseding cause" language was inapplicable because defendants had failed to introduce any evidence to demonstrate that Kelley was culpable for her injuries. Defendants stated that they were not intending to argue that Kelley was negligent. Instead, the defendants argued that the intervening and superseding language must stay in, in case the jury found for Kelley, since the defendants would need to assess if intervening conduct would adjust the damages award. Despite objecting, Kelley ultimately agreed.

**{¶16}** However, during closing arguments, defendants repeatedly referenced that Kelley's actions lead to the late discovery of the tumor. Defendants argued that Kelley chose not to come back to Dr. Contractor for a follow-up visit, and that "you can't blame a physician if a patient chooses not to follow up." Despite defendants' closing arguments, at no point did Kelley request another opportunity to discuss the jury instructions, nor did she object to defendants' closing remarks or renew her objection to the jury instructions.

**{¶17}** This appeal followed.

## II.  Analysis

**{¶18}** Kelley raises two assignments of error on appeal, the first of which argues the court erred in admitting testimony related to the ACR guideline, and the second of which challenges the jury instructions.

### A.  Admission of a Learned Treatise

**{¶19}** A trial court wields broad discretion in the admission of evidence, and its judgment shall not be disturbed absent an abuse of discretion. *Worley v. Durrani*, 2025-Ohio-2245, ¶ 15 (1st Dist.); *see In re K.M.*, 2024-Ohio-2278, ¶ 11 (1st Dist.), citing *HSBC Bank, USA, Natl. Assn. v. Gill*, 2019-Ohio-2814, ¶ 1-5 (1st Dist.) (recognizing

9

that the standard of review for hearsay determinations differs between Ohio appellate districts, but concluding that this court's prior holdings require that we analyze the alleged improper admission of hearsay under Evid.R. 803 for an abuse of discretion).

**{¶20}** Under Evid.R. 803, hearsay evidence is generally inadmissible, unless a hearsay exception applies. One such exception, under Evid.R. 803(18), admission as a learned treatise, is material to this appeal. Evid.R. 803(18) provides,

> Learned Treatises. To the extent called to the attention of an expert witness upon cross-examination or relied upon by the expert witness in direct examination, statements contained in published treatises, periodicals, or pamphlets on a subject of history, medicine, or other science or art, established as a reliable authority by the testimony or admission of the witness or by other expert testimony or by judicial notice. If admitted, the statements may be read into evidence but may not be received as exhibits.

**{¶21}** The use of a learned treatise is appropriate for the purposes of impeachment upon establishing that the authority referenced is reliable. *Bogdanov v. Ahres*, 2021-Ohio-1322, ¶ 8 (1st Dist.), citing *Bradley v. Ohio Dept. of Transp.*, 2012-Ohio-451, ¶ 23 (10th Dist.) (stating an expert need only testify that a learned treatise is a reliable authority for a court to admit its content into the record).

**{¶22}** Should a party take issue with a court's admission of evidence, the party must set forth in a timely manner "the specific ground of objection, if the specific ground is not apparent from the context" in which the objection was raised. Evid.R. 103(A)(1). "An objection is timely when the issue raised could have been avoided or corrected by the court." *Edelstein v. Edelstein*, 2025-Ohio-1514, ¶ 54 (1st Dist.), citing *State ex rel. Holwadel v. Hamilton Cty. Bd. of Elections*, 2015-Ohio-5306, ¶ 50. The

failure to timely object to an error waives all but plain-error review on appeal. *Anders v. Seitz*, 2023-Ohio-668, ¶ 15, fn. 3 (12th Dist.) (holding a party's objection to an opponent's qualification to cross-examine the party was untimely where the objection was not raised until after the party had examined another witness); *Secy. of Veterans Affairs v. Leonhardt*, 2015-Ohio-931, ¶ 47 (3d Dist.) ("The failure to timely object to errors concerning testimony waives all but plain error on review."). Plain error is generally not favored in civil cases and may only be applied in the extremely rare context in which an unobjected-to error hampers the basic tenants of fairness and thereby challenges the validity of the decision of the court below. *State ex rel. Target Auto Repair v. Morales*, 2022-Ohio-2062, ¶ 15, quoting *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 122-123 (1997).

**{¶23}** Now on appeal, Kelley asserts the court erred in admitting the ACR guideline because defendants failed to establish a foundation prior to its introduction. However, Kelley failed to timely raise her hearsay objection. Below, Kelley only raised a timely challenge to the admission of the ACR guideline on the basis of relevance. It was not until Dr. Mankowski was excused and the court reconvened the following day that Kelley asserted that the ACR guideline constituted inadmissible hearsay. Even when assessing the context surrounding Kelley's initial objection, it is not "obvious from the context" that Kelley was raising a hearsay objection. Kelley's attempt to revisit, reframe, and reraise her objection was ultimately untimely.

**{¶24}** Because Kelley failed to raise a timely objection, she has waived the issue for purposes of appeal, *Goldfuss* at 121 ("[W]e have long recognized, in civil as well as criminal cases, that failure to timely advise a trial court of possible error, by objection or otherwise, results in a waiver of the issue for purposes of appeal."), and this case does not present one of the extremely rare circumstances in which plain-error

review would be applicable in a civil case. *Goldfuss* at 122-123 ("[I]n appeals of civil cases, the plain error doctrine is not favored and may only be applied in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself."). Further, Kelley failed to raise a plain-error argument on appeal, and we decline to formulate an argument on her behalf. *See State v. Williams*, 2025-Ohio-1345, ¶ 45 (1st Dist.); *Hotz v. City of Cleveland*, 2020-Ohio-1383, ¶ 38 (8th Dist.) ("A court will not sua sponte undertake a plain-error analysis if a defendant fails to do so."); *State v. Brunson*, 2022-Ohio-4299, ¶ 24, citing *State v. Quarterman*, 2014-Ohio-4034, ¶ 19 ("This court is not obligated to formulate legal arguments on behalf of the parties, because acting as an appellate court, we preside as arbiters of the legal questions presented and *argued by the parties*."). (Emphasis added.)

**{¶25}** Even if Kelley's objection had been timely raised, any reference to the ACR guideline would constitute harmless error. *See Hoke v. Miami Valley Hosp.*, 2020-Ohio-3387, ¶ 75-76 (2d Dist.) (holding a failure to establish an adequate foundation may give rise to harmless error). "Civ.R. 61 instructs us to 'disregard any error that does not affect the substantial rights of the parties.'" *Travelers Property Cas. Corp. v. Chiquita Brands Internatl., Inc.*, 2024-Ohio-1775, ¶ 36 (1st Dist.); *United Bhd. of Carpenters & Joiners, Local Union No. 1581 v. Bell Eng. Ltd.,* 2006-Ohio-1891, ¶ 31 (6th Dist.) (holding errors that do not affect a substantive right in an outcome-determinative way must be disregarded). The admission of inadmissible evidence may be harmless when the evidence was cumulative to other testimony and evidence admitted at trial. *In re Z.*, 2019-Ohio-1617, ¶ 15 (1st Dist.).

**{¶26}** Over the course of a seven-day trial, the only use of the ACR guideline

came during Dr. Mankowski's cross-examination. The reliance upon the ACR guideline was to impeach Dr. Mankowski's testimony that Dr. Contractor breached the standard of care by ordering an MRI without IV contrast. To the contrary, the jury heard testimony from Dr. Contractor and Dr. Merkler that Dr. Contractor's diagnosis and the ordered treatment did not breach the standard of care. Therefore, even if the court erred in admitting inadmissible hearsay, doing so was harmless because it was cumulative to other testimony provided by other witnesses.

{¶27} Accordingly, Kelley's first assignment of error is overruled.

### B. Jury Instruction

{¶28} In her second assignment of error, Kelley argues the court erred when it administered a remote- or intervening-cause jury instruction.

{¶29} We review de novo whether a jury instruction is legally correct and factually warranted. *Clark v. Durrani*, 2025-Ohio-3096, ¶ 36 (1st Dist.), quoting *Jones v. Durrani*, 2024-Ohio-1776, ¶ 29 (1st Dist.), quoting *Cromer v. Children's Hosp. Med. Ctr. of Akron*, 2015-Ohio-229, ¶ 22. The Ohio Supreme Court has clearly stated that Civ.R. 51(A) provides,

> [A] party may not assign as error the giving or the failure to give any instruction unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection.

*Leber v. Smith*, 70 Ohio St.3d 548, 552 (1994), quoting Civ.R. 51(A).

{¶30} Here, Kelley objected to the remote-, intervening-cause language, but ultimately agreed to the instruction. At the charging conference, Kelley objected because she was concerned that the defendants were going to argue that her failure to follow up was an intervening cause. Despite defendants stating they would not do so,

during closing arguments they reiterated that "you can't blame a physician if a patient chooses not to follow up." Kelley never objected during closing arguments. In fact, Kelley did not repeat her objection to the jury instruction after closing remarks concluded or during the court's oral jury instructions. Pursuant to Civ.R. 51(A), Kelley waived this issue below and is precluded from now raising it on appeal. Accordingly, Kelley's second assignment of error is overruled.

### *III. Conclusion*

{¶31}    Having overruled Kelley's assignments of error, we affirm the judgment of the trial court.

Judgment affirmed.

**ZAYAS, P.J.,** and **CROUSE, J.,** concur.